The bill is by the complainants Unger, a duly licensed and practicing attorney and counselor-at-law of this state, and two incorporated associations of members of the bar, on behalf of themselves and other duly licensed attorneys and counselors-at-law of this state, and seeks to restrain the defendant corporation from engaging in such activities as constitute the practice of law and from advertising or holding itself out as being entitled and authorized to engage in such activities.
That the right to practice law is exclusive in those persons regularly admitted to practice is settled by the decisions (Inre Branch, 70 N.J. Law 537; In re Raisch, 83 N.J. *Page 69 Eq. 82; In re Hahn, 85 N.J. Eq. 510; New Jersey Photo EngravingCo. v. Carl Schonert Sons, Inc., 95 N.J. Eq. 12; Black andWhite Operating Co. v. Grosbart, 107 N.J. Law 63) and is conceded by the defendant.
It is not necessary to cite authorities for the proposition that this court has inherent power to protect by injunction rights in property from irreparable damage threatened by unlawful acts. And the right to practice law is such a property right as will be protected by injunction. In the language of Mr. Justice Field in Bradley v. Fisher, 80 U.S. 335; 20 L.Ed. 646 (at p.652):
"Admission as an attorney is not obtained without years of labor and study. The office which the party thus acquires is one of value, and often becomes the source of great honor and emolument to its possessor. To most persons who enter the profession it is the means of support to themselves and their families. To deprive one of an office of this character would often be to decree poverty to himself and destitution to his family."
In re O'Brien's Petition, 79 Conn. 46; 63 Atl. Rep. 777, held that the right of an admitted attorney to practice law is property, but that the right to be admitted to an examination for the bar is not a property right. And in State v. Chapman,69 N.J. Law 464; affirmed, 70 N.J. Law 339, where the defendant was convicted of practicing dentistry without a license, the supreme court said:
"A calling, business or profession, chosen and followed, is property. Barr v. Essex Trades Council, 8 Dick. Ch. Rep. 101,112; Slaughter House Cases, 16 Wall. 36, 116."
In this state, the right to practice law is conferred by letters-patent, issued under the great seal of the state by its chief executive. In re Branch, supra. This has been the custom from the very beginning of the Province of New Jersey. In reHahn, supra. So that attorneys-at-law in New Jersey are the holders of a franchise granted by the state, through the governor, by letters-patent, by the same authority as formerly was exercised by the British crown. 1 Pollock Maitland'sHistory of English Law 191. A franchise is a *Page 70 
"royal privilege, or branch of the king's prerogative, subsisting in the hands of a subject." 2 Bl. Com. 37. A special privilege conferred by government on individuals and which does not belong to the citizens of the country generally by common right. Ang. A. Corp. ¶ 4. And see Bouvier's Law Dictionary, "Franchise,""Patent."
Since the right to practice an ordinary calling, business or profession is property (State v. Chapman, supra), it follows that the right to practice a profession conferred by the state as a franchise by virtue of what was originally the king's prerogative, is a property right.
It is well established that this court has power to protect the holder of an exclusive franchise from irreparable injury by those not entitled to exercise such franchise. Delaware and RaritanCanal, c., Companies v. Camden and Atlantic Railroad Co.,16 N.J. Eq. 321; modified, 18 N.J. Eq. 546; Pennsylvania RailroadCo. v. National Railway Co., 23 N.J. Eq. 441; Elizabethtown GasLight Co. v. Green, 46 N.J. Eq. 118. And that the franchise is exclusive in a class rather than in an individual or corporation is no objection to relief.
Likewise, the jurisdiction of the court of chancery to enjoin a threatened irreparable injury to property, although it may involve a crime, is settled. Cumberland Glass Manufacturing Co.
v. Glass Bottle Blowers' Association, 59 N.J. Eq. 49, 56; hence it is immaterial that one who practices law without a license commits a criminal offense.
Defendant contends, however, that it does not hold itself out as being entitled to perform, nor does it threaten to perform any services for others which constitute the practice of law. Among the objects for which the defendant corporation was formed, as set forth in the certificate of incorporation, are the following:
"To transact a general real estate agency and brokerage business, including the management of estates; to act as agent, broker or attorney in fact for any person or corporations in buying, selling and dealing in real property and any and every estate and interest therein, and choses in action secured thereby, judgments resulting therefrom and other personal property collateral thereto, in making or obtaining loans upon such property, in supervising, managing and protecting *Page 71 
such property and loans and all interests in and claims affecting the same, in effecting insurance against fire and all other risks thereon, and in managing and conducting any legal actions,proceedings and business relating to any of the purposes hereinmentioned or referred to; to register mortgages and deeds of trust of real property or chattels real and all other securities collateral thereto; to investigate and report upon the credit and financial solvency and sufficiency of borrowers and sureties upon such securities." (Italics mine.)
In the conduct of its business the defendant has issued advertisements containing the following statements:
"Landlords' Management Corporation.
It is organized and incorporated to serve the individual landlord, at a very nominal cost, giving him the benefit of a large corporation affiliation where real systematic research and business methods will be used to protect his interests.
How it Operates.
As a landlord you require a certain amount of legal or real estate service in handling your tenants. You need leases drawn that protect your interests both in the care of the property involved and the rental rates, which is part of our service to you.
Rents, Distraints, Dispossessing.
During your temporary absence we will collect your rents without additional cost. We will issue distraints for non-payment of rent, and bring dispossess proceedings up to the point of starting suit.
Suits will be filed for reasonable fees plus court costs."
Defendant says that it at no time intended to act as attorney in any suit and that in the event suits were to be started in the conduct of its business an attorney-at-law would have been engaged. But, the practice of law is not limited to the conduct of litigation and appearances in court. In Boykin v. Hopkins,162 S.E. Rep. 796, which was an action to restrain the granting of a charter to a proposed corporation, the Georgia supreme court reviewed the authorities on the subject and reached the conclusion that the practice of law is not confined to the conduct of cases in court, but includes "the preparation of pleadings and other papers incidental to any action or special proceeding in any court or other judicial body, conveyancing, the preparation of all legal instruments of all kinds whereby a legal right is secured, the rendering of opinions as to the validity or invalidity *Page 72 
of the title to real or personal property, the giving of any legal advice, and any action taken for others in any matter connected with the law."
And the appellate division of the New York supreme court has said that the practice of law "embraces much more than the conduct of litigation. The greater, more responsible and delicate part of a lawyer's work is in other directions. Drafting instruments creating trusts, formulating contracts, drawing wills and negotiations, all require legal knowledge and power of adaptation of the highest order. Besides these employments, mere skill in trying lawsuits where ready wit and natural resources often prevail against profound knowledge of the law, is a relatively unimportant part of the lawyer's work." Matter ofPace, 170 App. Div. 818; 156 N.Y. Supp. 641; People v. TitleGuarantee and Trust Co., 180 App. Div. 648; 168 N.Y. Supp. 278.
And it has been held that a collection agency which undertakes to furnish legal services where they may be necessary is engaged in the practice of law. Matter of Co-operative Law Co., 198 N.Y. 479; 92 N.E. Rep. 15; 32 L.R.A. (N.S.) 55.
It seems clear to me that the language used both in the charter of the defendant and in its advertising constitutes a holding out by the defendant that it is qualified to practice law. A most obvious instance is the offer to "issue distraints for non-payment of rent, and bring dispossess proceedings up to the point of starting suit." To distrain for rent involves the conduct of a highly technical proceeding under the Distress act, and to bring dispossess proceedings up to the point of starting suit involves not only a proper construction of the lease, but also a knowledge of the landlord and tenant law.
The proposal that "suits will be filed for reasonable fees plus court costs" is too obvious to require comment. Defendant says that in such instances it intended to employ an attorney, but such is not the implication of the language used, nor do I believe the defendant intended the public to so interpret it.
In any event, the defendant's excuse can avail it nothing, for since a corporation cannot practice law directly (New *Page 73 Jersey Photo Engraving Co. v. Carl Schonert Sons, Inc.,supra) it cannot do so indirectly, by employing lawyers to practice for it. The excellent expression of the New York court of appeals in Matter of Co-operative Law Co., supra, will bear repeating here for the salutary effect it may have upon similar enterprises in this state:
"The relation of attorney and client is that of master and servant in a limited and dignified sense, and it involves the highest trust and confidence. It cannot be delegated without consent, and it cannot exist between an attorney employed by a corporation to practice law for it, and a client of the corporation, for he would be subject to the directions of the corporation, and not to the directions of the client. There would be neither contract nor privity between him and the client, and he would not owe even the duty of counsel to the actual litigant. The corporation would control the litigation, the money earned would belong to the corporation, and the attorney would be responsible to the corporation only. His master would not be the client, but the corporation, conducted, it may be, wholly by laymen, organized simply to make money, and not to aid in the administration of justice, which is the highest function of an attorney and counselor-at-law. The corporation might not have a lawyer among its stockholders, directors, or officers. Its members might be without character, learning, or standing. There would be no remedy by attachment or disbarment to protect the public from imposition or fraud, no stimulus to good conduct from the traditions of an ancient and honorable profession, and no guide except the sordid purpose to earn money for stockholders. The bar, which is an institution of the highest usefulness and standing, would be degraded if even its humblest member became subject to the orders of a money-making corporation engaged not in conducting litigation for itself, but in the business of conducting litigation for others. The degradation of the bar is an injury to the state."
 A preliminary restraint will issue. *Page 74