NEW JERSEY STATE BAR ASSOCIATION, ETC., *ET AL.*, PLAINTIFFS-APPELLANTS, v. NORTHERN NEW JERSEY MORTGAGE ASSOCIATES, *ET AL.*, DEFENDANTS-RESPONDENTS.

Argued May 14, 1956—Decided June 25, 1956.

186

*Mr. Milton T. Lasher* argued the cause for the appellants.

*Mr. Milton M. Unger* argued the cause for the respondents (*Messrs. Milton M. and Adrian M. Unger,* attorneys for the defendants-respondents, *Mr. Sam Denstman* on the brief).

The opinion of the court was delivered by

VANDERBILT, C. J. The New Jersey State Bar Association and the five individual plaintiffs, as officers of the association and as attorneys-at-law of this State, sued to enjoin the defendants Northern New Jersey Mortgage Associates and Northern New Jersey Abstract Company from performing acts and rendering services which are alleged to constitute the unauthorized practice of law. From the summary judgment entered by the Chancery Division of the Superior Court in favor of the defendants dismissing the action, the plaintiffs appealed to the Appellate Division of the Superior

Court. Since the decision below turned on a belief that the Supreme Court had the exclusive jurisdiction to prevent the unauthorized practice of law by laymen and since the case presents a matter of great interest to the members of the bar of this State, we certified the appeal on our own motion.

The plaintiffs sue to protect "the public" and "the administration of justice" from the irreparable harm that will come to both, as a result of the practice of law by persons not licensed or authorized to do so; the five individual plaintiffs sue also to protect their property rights in their licenses to practice law.

The complaint alleges that the defendant Northern New Jersey Mortgage Associates (which for the sake of convenience we will refer to as the "Mortgage Company"), in connection with its business of lending money on the security of real property mortgages, causes to be prepared by its employees and by its affiliate, the other defendant, Northern New Jersey Abstract Company (referred to as the "Abstract Company"), "all of the legal instruments required in connection with these loans, such as bonds, mortgages, affidavits, abstracts of title, title reports and title certificates." It alleges that in addition "it engages one or more attorneys or laymen to supervise the execution of such legal instruments, to close such loans, to render legal opinions, and to perform such other legal services as may be required or requested by the parties to the transactions." All this, it is charged, constitutes the practice of law which can never be done by a corporation, nor by an individual either unless he is duly licensed to practice in New Jersey "and then only when acting as attorney for the persons or corporation constituting a party to the instrument or transaction."

By way of relief the plaintiffs seek to enjoin the defendants and their associates and employees from all acts which constitute the practice of law, including the preparation of legal instruments and the giving of advice to any one "in matters involving legal knowledge or the application of legal principles" pertaining to "ownership, conveyance or mortgage of land, or otherwise."

Separate answers were filed by each defendant denying the material allegations of the complaint, and in four separate defenses they each alleged that the practices claimed to constitute the practice of law were incident to their business and by statute did not constitute the unauthorized practice of law and that they were being deprived of their constitutional guarantees. Depositions of the president and the employees of the defendants were taken, after which the plaintiffs made a motion for a judgment on the pleadings or in the alternative for a summary judgment, and in the event that neither was granted then for an order striking the defenses. The defendants filed a cross-motion for summary judgment.

The trial court dismissed the complaint holding:

"While the complaint contains an allegation of damage to the individual plaintiffs as a result of the activities of the defendants, no proof in support of the allegation was offered and there are, in fact, no private rights involved. What the plaintiffs seek in this action is to have this court regulate the practice of law by the use of its injunctive power. In my opinion, this court is without jurisdiction to grant the relief sought. Under the provisions of *Art.* VI, *sec.* II, *par.* 3 of the Constitution, the Supreme Court is vested with exclusive jurisdiction over the admission of persons to the practice of law; the discipline of those admitted and the prevention of unauthorized practice of law by laymen. *In re Baker*, 8 *N. J.* 321 (1951)."

Piecing together the bits of information given to us by the pleadings and the depositions taken prior to the motions in the trial court the following facts appear:

The defendants are both private corporations. They have a common president, George Rothman, an attorney-at-law of New Jersey, and common directors and stockholders. The Mortgage Company is in the business of negotiating and placing loans on real estate on behalf of itself and others. The greater portion of the loans which it places in its own name are subsequently assigned to others. The Abstract Company handles all of the details in connection with the searching, certifying and closing of the titles and loans on the properties upon which the mortgage loans are made by

the Mortgage Company or its clients, and it arranges for title insurance to the mortgagees and to the buyers or borrowers. While the defendants are apparently separate entities, there is a certain confusion of their records and in some cases even their employees do not distinguish between the two as their employer.

The business of both companies seems to deal primarily with two distinct types of transactions—(1) loans on properties that are to be developed into new home communities, and (2) loans on old and new homes as single units unconnected with such new developments.

In the first type of transaction the Mortgage Company arranges for the complete financing of a development from the construction loans to the builder, to enable him to build the homes, to the permanent mortgage loans to be granted to the individual home buyers in the development, to enable them to buy the homes. In most cases the development is financed with a view toward Federal Housing Administration mortgage insurance or Veterans' Administration loan guarantees, and in these cases the Mortgage Company undertakes to procure the necessary approvals incident to the protection offered by the Federal Government. In most cases the Abstract Company searches the title to the entire tract and determines the state of the title; it procures the necessary title certificates and clearances during construction and up to the final placing of the permanent mortgage loans on each dwelling unit. The bonds and mortgages in connection with construction loans are prepared by the staff of the Abstract Company. There is some indication, though the proof is not clear, however, that no charges are made for the services performed for the developer of multiple units. How these companies who are in business for profit make their money is again not clear from the depositions. There is some indication that each individual purchaser of the houses in a development pays a mortgage processing fee to the Mortgage Company, and a charge for title searching, abstracting and "legal work" to the Abstract Company, all as part of his "closing" fees and expenses. Apparently included in services

rendered here by the Abstract Company is the preparation of title affidavits, corporate resolutions and the purchaser's bonds and mortgages.

In the other type of transaction, when a mortgage commitment is obtained from a lender or if the Mortgage Company itself determines to lend the money initially, the matter is turned over to the Abstract Company. That Company arranges for the necessary title searches, the reading and certification of the title, the removal of objections to the title, the preparation and issuance of a title insurance binder through one of the title companies with which it does business, the preparation of the mortgage and related documents, and the closing of the title and the loan. The closings are handled by one of three attorneys employed by the Abstract Company. All fees for services rendered in connection with a particular loan are billed for by the Abstract Company and collected at the closings.

One of the attorneys employed by the Abstract Company indicated in his deposition that his job was to read, certify and close titles and mortgage loans, and that his compensation was fixed on a case basis with a weekly ceiling.

The claim is made by the defendants that outside attorneys representing purchasers and mortgagors are never excluded from serving their clients unless they are "unqualified" or not approved by the title insurance companies.

On this record we are urged to reverse the judgment below and grant judgment enjoining the defendants in accordance with the prayers of the complaint.

The two basic questions presented by this appeal are: (1) whether the plaintiffs have standing to maintain such an action as this, and (2) whether the acts and practices presented to the court constitute the unauthorized practice of law.

█ It was indeed proper for the trial court to have distinguished between its right to enjoin the defendants where private property rights are involved and special irreparable injury suffered or threatened, and its power to do so at the instance of the plaintiffs as protectors of the public's

interest when no such private rights are concerned. The considerations underlying the granting of injunctive relief differ in each case. Its brief comment indicates that it recognized its fundamental jurisdiction in equity to grant relief in those cases where special injury could be shown but that since it was absent here, and the action was basically one in the public interest, it was powerless to act because of what was said in our opinion in *In re Baker, supra*, 8 *N. J.* 321 (1951).

 While there is language in the case of *In re Baker, supra*, 8 *N. J.* 321 (1951), which could reasonably have led the trial judge here to conclude that this court had declared its exclusive jurisdiction in these matters of unauthorized practice of law, we intended no such result. The constitutional grant to the Supreme Court of "jurisdiction over the admission to the practice of law and the discipline of persons admitted," *Art.* VI, *Sec.* II, *par.* 3, gave it exclusive jurisdiction only over admissions and the disciplining of members of our bar. And while these powers necessarily carried with them the power to prevent laymen from practicing law, which is what we stated in the *Baker* case, *supra*, it did not operate to preempt this incidental power and rob the Superior Court of its "original general jurisdiction throughout the State in all causes," Constitution, *Art.* VI, *Sec.* III, *par.* 2. The Supreme Court has the power to punish for contempt those engaged in the unauthorized practice of the law, *In re Baker, supra*, 8 *N. J.* 321, 334 (1951). The Superior Court also has jurisdiction to deal with such practice in the manner dictated by the facts of a particular case and the laws of this State.

Just prior to the consideration of the *Baker* case, this court had occasion in *Stack v. P. G. Garage, Inc.*, 7 *N. J.* 118 (1951), to consider whether a layman, who had sued in the county district court to recover for services rendered in connection with an appeal taken on behalf of the defendant to one of the county boards of taxation, was properly denied recovery on the ground that part of the services for which he was suing constituted the practice of law and since he had

no license to do that the illegality permeated his entire arrangement. We affirmed the conclusion in the *Stack* case, giving recognition to the fact that there was jurisdiction in the courts below with respect to matters involving the unauthorized practice of law.

On at least two occasions prior to the adoption of the new Constitution the issue presented by the case at bar was squarely before the Court of Chancery. These cases of *Unger v. Landlord's Management Corp.,* 114 *N. J. Eq.* 68 *(Ch.* 1933), and *Auerbacher v. Wood,* 139 *N. J. Eq.* 599 *(Ch.* 1947), were neither cited nor commented upon in the *Baker* case, *supra,* which would appear to have been a natural or necessary incident if the Supreme Court believed itself, under its constitutional power, to be the exclusive tribunal for the granting of relief in unauthorized practice of law cases.

 The broad power of equity in these matters is based upon this simple philosophy:

"An injunction is an extraordinary equitable remedy utilized primarily to forbid and prevent irreparable injury. It must be administered with sound discretion and always upon the considerations of justice, equity, and morality evolved by the given case." *Canda Realty Co. v. Carteret,* 136 *N. J. Eq.* 550, 556 *(Ch.* 1945).

No court of equity will exercise its power to grant injunctive relief merely upon a showing that the party proceeded against is committing or is intending to commit an unlawful or an improper act. To obtain equitable cognizance there must be imminence of irreparable damage to the property or rights of the plaintiff, *Ballantine v. Harrison,* 37 *N. J. Eq.* 560, 561 *(E. & A.* 1883), or in proper cases to the class on behalf of which the plaintiff sues, *cf. Zaleski v. Local 401, United Elec. etc. of America,* 9 *N. J. Super.* 206, 208 *(App. Div.* 1950). See also 28 *Am. Jur.* 347. But the fact that no property or pecuniary interest is involved is no defense to a suit to enjoin the practice of a profession where the action is on the behalf of the public, *State ex rel. Jackson v. Lindsay,* 85 *Kan.* 79, 116 *P.* 207, 35 *L. R. A. (N. S.)* 810 *(Sup. Ct.* 1911); *North American Ins. Co. v. Yates,* 214 *Ill.* 272, 73 *N. E.* 423 *(Sup. Ct.* 1905), see also 28 *Am. Jur.*

349, and *cf. In re Debs,* 158 *U. S.* 564, 15 *S. Ct.* 900, 39 *L. Ed.* 1092, 1103 (1895), or where the plaintiff is capable and competent to protect the public interest, *cf. Auerbacher v. Wood,* 139 *N. J. Eq.* 599, 600 (*Ch.* 1947). Nor will it be granted to those who proceed under the outward pretense of a public service, motivated in fact by selfish purposes, *cf. Lipman v. Forman,* 138 *N. J. Eq.* 556 (*Ch.* 1946); *Mosig v. Jersey Chiropodists, Inc.,* 122 *N. J. Eq.* 382 (*Ch.* 1937).

There is some confusion evident in the cases as to the exact nature of the right to practice law. A great many of the courts recognize the license as a right "in the nature of a franchise" granted only to those of good moral character who have undertaken to comply with the educational requirements designed to equip them with the essential knowledge of the laws. In this State, while we have acknowledged the existence of such a right as being "in the nature of a franchise," *Unger v. Landlords' Management Corp.,* 114 *N. J. Eq.* 68 (*Ch.* 1933); *Auerbacher v. Wood, supra,* 139 *N. J. Eq.* 599 (*Ch.* 1947), affirmed 142 *N. J. Eq.* 484 (*E. & A.* 1947), it seems to have been for historical reasons, *In re Raisch,* 83 *N. J. Eq.* 82 (*Ch.* 1914); *In re Branch,* 70 *N. J. L.* 537 (*Sup. Ct.* 1904). The more recent attitude here has been that admission to our bar is a privilege granted in the interests of the public to those who are morally fit and mentally qualified, solely for the purpose of protecting the unwary and the ignorant from injury at the hands of persons unskilled or unlearned in the law. *Tumulty v. Rosenblum,* 134 *N. J. L.* 514, 518 (*Sup. Ct.* 1946). "[T]he licensing of law practitioners is not designed to give rise to a professional monopoly, but rather to serve the public right to protection against unlearned and unskilled advice and service in matters relating to the science of the law." *Auerbacher v. Wood, supra,* 142 *N. J. Eq.* 485, 486 (*E. & A.* 1948).

██ Attorneys enjoy rights peculiar to themselves, not enjoyed by those outside the profession, but only as an incident to the public welfare. And because of the incidental

nature of their right, as individual members of the bar they have no standing to complain in the absence of specific injuries to themselves arising from alleged illegal practice, and no basis for any claim of irreparable damage. As a class, however, attorneys themselves are in a better position to come upon the violations of the law (*N. J. S.* 2*A*:170–78–80) and of the rules of court (*R. R.* 1:12–1) by those not licensed to practice, and there seems to be no sound reason for denying them the privilege of performing the public function of prosecuting the violators as a class through their duly constituted and recognized bar associations.

 Except for the short allegation to the effect that "the individual plaintiffs and all other attorneys at law of the State of New Jersey similarly situated will be deprived of their property right in their licenses to practice law," the emphasis of the complaint is exclusively upon the injury to the public and to the administration of justice. Unless the individuals can show such specific injury, the action as to them must be dismissed. But in any event, the New Jersey State Bar Association has standing here to maintain its action as, indeed, would a county bar association also in an appropriate case.

 The real complaint here is directed against the Abstract Company, which handles all of the legal details in connection with the Mortgage Company's transactions. It is admitted that the Abstract Company prepares deeds, bonds and mortgages and other instruments connected with titles and mortgage loans and closes these transactions in its corporate capacity through attorney-employees. The documents prepared create binding obligations effecting the status of the parties concerned. The services performed incidental to the closing of titles and loans includes the giving of legal advice in connection with these transactions. The Abstract Company argues that it makes no charge for these services and it bills only for searching and abstracting. This fact alone does not remove the acts from constituting the practice of law. *In re Baker, supra,* 8 *N. J.* 321, 338 (1951); *Stack v. P. G. Garage, Inc.,* 7 *N. J.* 118 (1951).

██ The Abstract Company stands between its attorney-employees and the purchasers, mortgagors, mortgagees and builders, and undertakes the performance of legal services for all concerned. The relationship of the attorney-employees to the affected parties is in sharp contrast to the familiar and not ordinarily improper relationship of the attorney of a savings and loan association, savings bank, or other institutional lender to their borrowers. The professional responsibilities of the attorney in the latter case toward both lender and borrower are solely the attorney's and are readily fixed; cf. *In re Greenberg*, 21 *N. J.* 213 (1956). In contrast the Abstract Company undertakes to assume, or at least to share, the professional responsibilities of its employee-attorneys.

 Moreover, these attorney-employees do more than operate as a legal department of a corporation. In such a department the attorney-employees are hired to advise and protect the corporation, their employer. The legal work they do directly involves the employer and its relationships with others with whom it has dealings. These employees of the Abstract Company go beyond that and do legal work dealing with the perfection and conveyancing of titles and the consummation of secured loans on real property for the purchasers, mortgagors, mortgagees, and builders which affects the rights, duties and obligations of those parties in a manner totally unrelated to the obligations of the Abstract Company. Corporations may act for themselves through their own attorney-employees, but they cannot perform acts for others in this capacity which amounts to the practice of law. A corporation cannot practice law and it may not do it even as an incident to its lawful business, *R. R.* 1:12–1, *supra.*

But is this practice of law unauthorized?

*N. J. S.* 2A:170–81 of the chapter relating to acts constituting disorderly conduct generally, excepts from the condemnation of unauthorized practice:

"*a.* Any person, partnership or corporation lawfully engaged in the business of searching or insuring titles to real estate, in so far

as may relate to the rendering of legal advice or to the preparation and execution of conveyances or other instruments connected with or incidental to the guaranteeing or searching of titles to real estate either by such person, partnership or corporation, or his or its employees; or

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

"c. Any person, partnership or corporation engaged in the leasing, sale or exchange of real or personal property, or in the loaning of money on mortgages on real or personal property, in so far as may relate to legal documents incidental to any lease, mortgage, sale, or exchange; or　\*　\*　\*."

*Art.* VI, *Sec.* II, *par.* 3 of the Constitution gives to the Supreme Court "jurisdiction over the admission to the practice of law and the discipline of persons admitted." This is a field, therefore, in which this court has exclusive jurisdiction. Even in the absence of express provision, it is generally conceded that the power to control admissions to practice law and to discipline members of the bar is inherent in the judiciary, *In re Baker, supra,* 8 *N. J.* 321 (1951); *In re Morse,* 98 *Vt.* 85, 126 *A.* 550, 36 *A. L. R.* 527 (*Sup. Ct.* 1924); see also *People ex rel. v. Peoples Stockyard Bank,* 344 *Ill.* 462, 176 *N. E.* 901 (*Sup. Ct.* 1931).

While the Legislature may act to prevent the evils which may arise from the unauthorized practice of law, "penal statutes are an aid to and not a limitation upon the exercise by the judiciary of its power to regulate the practice of law," *In re Baker, supra,* 8 *N. J.,* at *page* 336; see also *People ex rel. Chicago Bar Ass'n v. Goodman,* 366 *Ill.* 346, 8 *N. E.* 2d 941, 111 *A. L. R.* (*Sup. Ct.* 1937), *certiorari* denied 302 *U. S.* 728, 58 *S. Ct.* 49, rehearing denied 302 *U. S.* 777, 58 *S. Ct.* 138, 82 *L. Ed.* 601; *Rhode Island Bar Ass'n v. Automobile Service Ass'n,* 55 *R. I.* 122, 179 *A.* 139 (*Sup. Ct.* 1935).

The record that comes before us in this case is incomplete and presents no satisfactory basis for the granting of the extraordinary relief here sought. Seemingly, the defendant Abstract Company is practicing law in some of the aspects of its operations. But it would be manifestly unfair to make a general peremptory determination against these defendants without a complete record of the details of their

method of doing business, buttressed by testimony and records relating thereto. We should know the method and manner of the transaction of the different phases of their business which involve the practice of law; the volume and extent of that business; the exact relationship between the defendants themselves; the exact relationship between the defendants and the title insurance companies with which they do business; the details of the relationship between the defendants and the mortgagees for whom they work and, more important than that, the details of the relationship between the defendants and the mortgagors; the percentage of times outside attorneys represent mortgagors or mortgagees; whether the schedule of charges adopted by the defendants tends to discourage purchasers or mortgagors from having their own attorneys; and the exact fee and compensation arrangements existing between the defendants, their mortgagees and the mortgagors as well as their attorney-employees.

The judgment is affirmed as to the individual plaintiffs and in all other respects the judgment is reversed and the cause remanded for a plenary hearing and disposition in the Chancery Division of the Superior Court.

HEHER, J., concurring in result.

*For reversal and remandment*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, JACOBS and BRENNAN—6.

*For affirmance*—None.