DELAWARE OPTOMETRIC CORPORATION, a corporation of the State of Delaware, and WILLIAM W. McCOY, ALFRED J. MAJESKI and HAROLD I. Moss, Plaintiffs Below,

Appellants,

*vs.*

PAUL W. SHERWOOD and RUTH SHERWOOD, trading as CAVALIER & Co., and EDWIN P. J. KUHWALD, Defendants Below,

Appellees.

*Supreme Court of Delaware on Appeal, January 23, 1957.*

Appeal from a judgment of the Court of Chancery of New Castle County dismissing the complaint.

*Thomas Herlihy, Jr.,* and *Morris Cohen,* Wilmington, for appellants.

*H. James Conaway, Jr.,* Wilmington, for Paul W. Sherwood and. Ruth Sherwood, appellees.

*Henry A. Wise, Jr.,* and *Thomas J. Healy, Jr.,* Wilmington, for Edwin P. J. Kuhwald, appellee.

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, JJ., sitting.

WOLCOTT, Justice: This appeal presents the basic question of whether or not licensed optometrists may enjoin the practice of optometry by unlicensed persons. The Vice Chancellor on the motion of the defendants dismissed the complaint at the close of the plaintiffs' proof and from that judgment the plaintiffs have appealed.

The plaintiffs are a corporation containing as its members twenty-four out of a total of twenty-seven practicing optometrists in the State of Delaware and three individual licensed optometrists.

The defendants are opticians and are not licensed optometrists. They concede for the purposes of this appeal that it may be assumed that they have been fitting contact lenses, an act of optometry, for which they are not licensed.

No showing was made at the trial of any request to the Attorney General to invoke the criminal sanctions of the Delaware Optometry statutes against the defendants. Nor was there any evidence of special damage to the plaintiffs' business by reason of the complained of acts.

The Vice Chancellor held that the Delaware Optometry Law was enacted to protect the public from incompetence and did not grant an exclusive franchise to licensed optometrists enforceable by injunction. He also held that the acts of the defendants did not constitute a public nuisance and that, under the circumstances, the Court of Chancery was without jurisdiction.

The Delaware Optometry Law, 24 *Del.C.*, §§ 2101-2119, defines the practice of optometry and creates a Board of Examiners in Optometry. It authorizes the Board of Examiners to make rules and regulations for the enforcement of the law; to conduct examinations of persons seeking to be licensed as optometrists, and to register and certify successful applicants. Upon the presentation of the Board's certificate to it the State Tax Department is required to issue a license to practice optometry upon payment of the required fee.

The Delaware Optometry Law also sets up standards for licensed optometrists and prohibits the practice of optometry (which includes the acts the defendants herein are specifically charged with) by persons not found qualified by the Board. The law provides that for each violation the violator shall be subjected to a fine, and directs the Attorney General to prosecute every case of such an offense whenever it is called to his attention.

The plaintiffs argue that the Delaware Optometry Law confers upon licensed optometrists a franchise which is a property right and which may be protected by injunctive process at the suit of a licensed optometrist. Fundamentally, the argument comes down to a contention that the statute creates a monopoly and that the licensed op-

tometrists are entitled to be free from competition from unlicensed practitioners.

Whether or not such a franchise has been granted depends fundamentally upon the construction of the statute itself. It must appear that one of the statutory purposes is to protect the licensee from unfair competition by non-licensees. 3 *Restatement of Torts,* § 710. If, however, the statute is designed primarily to protect the public against incompetent persons who, purporting to practice optometry, might thereby adversely affect the health or physical comfort of the public, it ordinarily does not grant a franchise to licensees to be protected against the competition of unlicensed persons. *MacBeth v. Gerber's, Inc.,* 72 *R.I.* 102, 48 *A.2d* 366; *New Hampshire Board of Registration, etc. v. Scott Jewelry Co.,* 90 *N.H.* 368, 9 *A.2d* 513. The question in all such cases is one of determining the fundamental meaning and purpose of the statute.

The Delaware Optometry Law sets up certain standards which shall be met by all applicants for licenses to practice optometry. It authorizes the Board to examine such applicants of their fitness and requires the State Tax Department to license a certified applicant. The practice of optometry by an unlicensed person by § 2119 is made a criminal offense and requires the Attorney General to "prosecute every case to final judgment" when his attention has been called to a violation of the statute.

It is apparent to us that, reading the Delaware Optometry Law as a whole, it was enacted for the protection of the health of the general public from the incompetent practice of optometry. In order to accomplish the enforcement of the purpose the General Assembly provided the remedy of a criminal prosecution, with the unusual proviso that the Attorney General shall prosecute to final judgment, thus attempting at least to take from the chief prosecuting officer of the State his prerogative of deciding in his sole discretion whether or not to present an indictment.

We can find no provision in the statute which can remotely be considered as creating a property right in licensed optometrists to be free from competition from unlicensed persons. In

the absence of such a statutory grant, individual licensees may not prevent competition by enjoining the practice by unlicensed persons. The remedy for enforcement of the statute lies in the criminal courts. *MacBeth v. Gerber's, Inc., supra; New Hampshire Bd. of Registration, etc. v. Scott Jewelry Co., supra; Mosig v. Jersey Chiropodists, Inc.,* 122 *N.J.Eq.* 382, 194 *A.* 248; *People ex rel. v. Universal Chiropractors Ass'n,* 302 *Ill.* 228, 134 *N.E.* 4; *State v. Maltby,* 108 *Neb.* 578, 188 *N.W.* 175; *Drummond v. Rowe,* 155 *Va.* 725, 156 *S.E.* 442.

The plaintiffs cite numerous decisions from other states in support of their position. Many of the cases cited are distinguishable from the ones before us. It would, however, serve no useful purpose to discuss them. Certain of them, however, notably *Ezell v. Ritholz,* 188 *S.C.* 39, 198 *S.E.* 419, and *Seifert v. Buhl Optical Co.,* 276 *Mich.* 692, 268 *N.W.* 784, support the plaintiffs' position. It will suffice to say that we have read this line of decisions, do not agree with them, and, accordingly, decline to follow them. The plaintiffs also stress *Frost v. Corporation Commission,* 278 *U.S.* 515, 49 *S.Ct.* 235, 73 *L.Ed.* 483. That case, however, dealt with the right of the holder of a permit to operate a cotton gin within certain geographic limits to enjoin the operation of such a gin by the non-holder of a permit. The case is obviously not in point. Unlicensed competition which directly infringed on the plaintiffs' exercise of a profitable personal grant under state authority was involved.

It is to be noted that there is no proof in the record before us that the acts of the defendants in any way resulted in actual damage to the profits derived by the plaintiffs in the exercise of their licenses. Some of the cases cited by plaintiffs contained this additional element. Whether the addition of proof of direct injury to the business of a licensee would change the result, we do not have to decide. The point is not before us.

The Vice Chancellor found as a fact that the activities of the defendants did not constitute a public nuisance and as such enjoinable. The record supports this finding. Even if the opposite had been true, however, the abatement of a public nuisance, in the absence of

a showing of direct and special injury to the plaintiff, must be at the suit of the Attorney General who is not a party to this cause. *Town of Seaford v. Eastern Shore Public Service Co.,* 22 *Del.Ch.* 1, 191 *A.* 892; *Harlan & Hollingsworth Co. v. Paschall,* 5 *Del.Ch.* 435.

One further argument advanced by the plaintiffs must be referred to. It is argued that the Delaware Optometry Law creates a profession or a calling, the unauthorized practice of which may be enjoined at the suit of a licensed member of the profession. Plaintiffs argue that optometry, as a profession, is comparable with the profession of law, the members of which, say the plaintiffs, may enjoin its unauthorized practice by individual suits in Chancery. The argument is based upon the proposition that a license is a franchise in the nature of a property right.

We do not feel that we are called upon to decide, first, whether or not optometry is a profession, and, second, if it is a profession, whether it is comparable with the legal profession, and, third, assuming its comparability, whether individual licensees may enjoin its unauthorized practice. If the first two of the foregoing questions were answered as the plaintiffs would have them answered, we are, nevertheless, of the opinion that their position is not helped, for we think that the unauthorized practice of a licensed profession, including that of law, may not be enjoined at the suit of an individual member on the theory that he is protecting a property right. This conclusion is an answer to the argument of plaintiffs, for implicit in their argument is the admission that if lawyers have no property right enforceable in equity, *a fortiori,* then optometrists have no such property right.

We are aware that some other jurisdictions have taken a different view with respect to the legal profession. Cf. *Dworken v. Apartment House Owners Ass'n,* 38 *Ohio App.* 265, 176 *N.E.* 577; *Smith v. Illinois Adjustment Finance Co.,* 326 *Ill.App.* 564, 63 *N.E.2d* 264; *Unger v. Landlords Management Corp.,* 114 *N.J.Eq.* 68, 168 *A.* 229.[1] The basis upon which some of these courts have

---

1. In so far as the *Unger* case is based upon the theory that a lawyer has a property right in his license, it appears to have been overruled by the recent decision of *New Jersey State Bar Ass'n v. Northern N. J. Mortg. Associates,* 22 *N.J.* 184, 123 *A.2d* 498.

distinguished between the legal and statutorily-created professions is that the former is a "learned" profession of ancient standing. We regard the ground of the purported distinction as one of doubtful logic. In our view there can be little difference between a lawyer suing to enforce his monopoly to collect legal fees and an optometrist suing to enforce his monopoly to collect fees for his services. One is on no higher plane than the other—each is nothing more than an attempt to prevent unlicensed competition.

Unlike a number of our sister states, Delaware has not undertaken by statute to regulate the legal profession, but has left its regulation in the hands of the courts as one of their ancient prerogatives. Thus, 10 *Del.C.* § 1905, provides that there may be a competent number of attorneys admitted by the Supreme Court to practice, and provides that they shall be subject, upon misbehavior, to discipline.

This statute is merely declaratory of an ancient rule finding its roots in English Jurisprudence. It is traceable in Delaware directly back to a Colonial Act of 1726[2] which is in almost identical language to 10 *Del.C.* § 1905, and to an earlier act[3] which, for the "preventing of Abuses and Irregularities in all and every the Courts" directed the Justices to admit qualified persons to practice as attorneys.

As a matter of fact, the right of the Colonial Courts to admit qualified persons to practice before them as attorneys did not stem from these Colonial Acts for, on November 7, 1676, we find one Thomas Spry admitted to practice as the first recorded attorney in Delaware.[4]

■ We think the Colonists transplanted to the Territories upon Delaware, now the State of Delaware, the English system of jurisprudence as it existed at the time, including the right of the Courts to establish and control the bar. This conclusion, that of the transplant-

2. *Colonial Laws, Vol.* 1, *p.* 100.

3. *Colonial Laws, Vol.* 1, *p.* 20.

4. *Records of the Court of New Castle, Vol.* 1, *p.* 9.

ing to Delaware of the English common law system in all its facets, has been too well established by our Courts to admit of argument.

In England in the early days of the common law there was no bar and representation of litigants by attorneys could only be accomplished by royal warrant in exceptional cases. In course of time, however, many unqualified men began to appear regularly for litigants which in 1292 was sought to be corrected by an ordinance of Edward I limiting the number of attorneys and directing the King's Justices to provide a sufficient number of attorneys for each county in order to serve the Crown and the people.[5] At this early date, therefore, it is apparent that the bar was established for the well-being of the public and as an aid to the administration of justice. The ordinance of Edward I did not cure the evil, however, and in 1402 a statute was enacted,[6] providing for the examination by the Justices into the qualification of attorneys before enrolling them in the courts.

The profession thus established arose out of a public necessity for the exclusion from the practice of law of unqualified persons. The attorney thus became an officer of the court and an important adjunct to the administration of justice. The profession from the very start was affected with a public interest and was created for the protection of the public. The right and privilege of an attorney to be remunerated for his services was only incidental to its primary purpose—to serve the interests of justice.

It was this conception of the legal profession which was transplanted to this state. The duty of maintaining the profession and its standards has from the very first remained in our Courts, without any attempt on the part of the General Assembly to control it. So much so is this the fact that, in Delaware—unlike, we suppose, a majority of the states of the Union—there in no criminal sanction against the unauthorized practice of law. The admission of attorneys to practice, and the exclusion of unauthorized persons from practice lie within the province of this court. A violation of this court's exclusive right to license attorneys at law by presuming to practice law

5. *Vol.* 1, *History of English Law,* Pollock and Maitland, 194.
6. 4 *Henry IV, c.* 18.

without such license is a contempt of its authority and punishable as such. See *Annotations,* 36 *A.L.R.* 533; 100 *A.L.R.* 236.

In view of the primary responsibility of lawyers—that of acting as officers of the court for the assistance of the public—we think it erroneous to regard the lawyer's license as the grant of a franchise which he may protect as a property right. To do so is to lay undue emphasis upon a mere incident of the profession, and is to regard it as having been created for the benefit of the lawyers. The lawyer's license is a privilege granted upon good behavior. It is not the grant of a property right which the individual may protect by injunction. To regard it otherwise is to make the legal profession a business, and to destroy the very reason for its existence.

Originally, anyone could practice law, but for the protection of the public it was found necessary to circumscribe that right. The advance of civilization and its material things has done nothing to change that fundamental fact. The existence of the legal profession is continued for the assistance of the public under limitations imposed by the court. Violations of those limitations are punished by the court through its process of citation for contempt. It is, accordingly, clear that an individual lawyer has no property right in his license, in the sense that he may free himself from unlicensed competition by injunction.

The major premise of the plaintiffs, that lawyers have a franchise in the nature of a property right, is thus demonstrated to be false. This being so, there is no substance to the second phase of plaintiff's argument that optometrists may enjoin unlicensed competition because lawyers may do so.

We have read the recent decision of the Supreme Court of New Jersey, *New Jersey State Bar Ass'n v. Northern N. J. Mortg. Associates,* 123 *A.2d* 498, which agrees with the conclusion we have reached that an individual lawyer may not enjoin the unauthorized practice of law as an infringement of a property right, but announces the rule that a suit in equity to enjoin the unauthorized practice of law may be maintained by a bar association. This rule seems to be based upon the conception that a bar association has a quasi-public

standing and consequent duty in connection with the administration of justice and the protection of the public from incompetent practitioners. The consideration that the members of a bar association as a class are in an excellent position to learn of the unauthorized practice of law and, as such, to discharge the public function of prosecutor of violators may well commend the announced rule. Furthermore, the necessity of a trial of the alleged violator and the taking of evidence in support of the charge and the defense to it point up the inherent limitations attendant upon the instituting of proceedings for contempt before an appellate court. However, we do not have the point before us in this cause.

Nor do we have before us the possible question as to whether or not a bar association, the members of which are, of course, officers of the courts and, as such, a part of one branch of the government, has a quasi-public character as opposed to the private character of an association of doctors, dentists, or optometrists. No contention is made in the present appeal that the Optometric Association has any greater right to enjoin unauthorized practice of optometry than do the individual optometrists who are parties plaintiff. The theory of the plaintiffs in the present appeal is based solely upon the contention that they have a valuable property right which they are entitled to protect by injunction from unfair competition, by which is meant unlicensed competition. We have no doubt that no such property right exists.

In view of our conclusions that the Delaware Optometry Law was enacted for the protection of the public health and that the licensing of members of a profession does not confer a property right upon the licensees, the judgment of the court below will be affirmed.

BRAMHALL, Justice (concurring) : I agree with the conclusion of the majority in this case that the judgment of the lower court should be affirmed. My objection goes solely to the declaration therein that a lawyer has no right, property or otherwise, to enjoin the unauthorized practice of the law. I do not reach the question of whether or not such a finding is correct.

The prayer of the complaint in this case is to enjoin the defendants from the unauthorized practice of optometry. The right of plaintiffs to enjoin defendants from the unauthorized practice of optometry was the question for determination before the Court of Chancery and is the question presented to this Court. In their briefs and at the argument before this court plaintiffs, contending that in the consideration of this question an optometrist stood on the same footing as a lawyer, cited decisions of courts of last resort in a number of other states to the effect that a lawyer has such a right or interest in the practice of his profession as to permit him in his individual capacity to sue for an injunction to enjoin others engaged in the unauthorized practice of the law. Plaintiffs contended that, since under the great weight of authority a lawyer in his individual capacity could enjoin one from engaging in the unauthorized practice of the law, an optometrist would have an equal right to enjoin the unauthorized practice of optometry.

I agree that such an argument may be pertinent for the purpose of persuading this Court to decide plaintiffs' case in their favor. I concede that, at times, in order to reach a proper conclusion on the main issue, it may be necessary for a court to pass upon a question having only an incidental relationship to the main issue. But I do not agree that such necessity is presented here. I concur in the language of the Vice Chancellor in his opinion, in which he stated that the plaintiffs' equitable rights, if any, lie on a narrower basis, namely: their statutory rights under the provision of Ch. 21, *Title 24, Del.C.* 1953.

Without attempting to decide their relative position under the facts of this case, there can be little question but that in some respects at least the optometrist and the lawyer stand on an entirely different footing. Any rights which an optometrist may have would depend entirely upon the statute. On the other hand,—as so well set forth in the scholarly opinion of the majority—in this state the practice of the law is an outgrowth of the English common law system. Under this system an attorney is in a quite different category from that of one engaging in any other profession. Attorneys are officers of the court, subject to the control of the court in their actions. For good

reason they may be punished by the court or prohibited from practicing in an improper manner, or at all. I can see the plausibility of the argument, as set forth in the opinion of the majority, that such a position may be only another reason why an injunction against the unlawful practice of the law will not lie, but I do not believe that this Court should determine such an important question in this case where, at most, it is only collateral to the main issue.

The opinion of the majority, as far as it relates to the unauthorized practice of the law, runs directly counter to the weight of authority as laid down in the decisions of courts of last resort in other states. *Smith v. Illinois Adjustment Finance Co.*, 326 *Ill.App.* 564, 63 *N.E.2d* 264; *Paul v. Stanley*, 168 *Wash.* 371, 12 *P.2d* 401; *Fitchette v. Taylor*, 191 *Minn.* 582, 254 *N.W.* 910, 94 *A.L.R.* 356; *Unger v. Landlords Management Corp.*, 114 *N.J.Eq.* 68, 168 *A.* 229;[1] *Hobson v. Kentucky Trust Co.*, 303 *Ky.* 493, 197 *S.W.2d* 454; *Johnson v. Purcell*, 225 *Iowa* 1265, 282 *N.W.* 741. These courts, for different reasons, have said that a lawyer does have such a right or franchise as will permit him to enjoin one engaging in the unlawful practice of the law. They have all stated that the rights of a lawyer in such a case are quite different from those of any other profession. These opinions are entitled to respect. They should not be rejected in an informal manner.

For these reasons, I am of the opinion that the declaration in the majority opinion to the effect that an individual lawyer has no right, property or otherwise, which will warrant him in asking for an injunction against one engaged in an unauthorized practice of the law is entirely unnecessary and unwarranted.

1. This case has apparently been overruled in this respect by the Supreme Court of New Jersey in the recent case of *New Jersey State Bar Ass'n v. Northern New Jersey Mortgage Associates*, 22 *N.J.* 184.