84 N.J. Super. 70 (1964)
200 A.2d 820
HAROLD B. JEFFCOTT, PLAINTIFF,
v.
ARTHUR H. ERLES, DEFENDANT.
THOMAS B. FAHERTY, PLAINTIFF,
v.
JOHN A. BECKER AND BETTE V. BECKER, DEFENDANTS.
Superior Court of New Jersey, District Court, Burlington County.
Decided May 14, 1964.
*71 For the motion: Messrs. Dimon, Haines & Bunting (Mr. Martin L. Haines, appearing) attorneys for defendant Erles and defendants Becker.
Contra: Messrs. Powell & Davis (Mr. Robert E. Dietz, appearing) attorneys for plaintiff Jeffcott.
Messrs. Kessler & Tutek (Mr. Henry G. Tutek, appearing) attorneys for plaintiff Faherty.
WOOD, A.C., J.C.C.
The question presented by these two motions for summary judgment is whether a real estate broker who, having arranged a sale, engages in the unauthorized practice of law by preparing the agreement of sale, should be held, by reason of such act alone, to forfeit his right to a sales commission.
The cases before the court are two actions by realtors for the payment of commissions. In each, the defendant moves for summary judgment of dismissal of the complaint. The cases arise out of separate transactions, but the principal issue upon which the motions for summary judgment are presented is common to both. Indeed, although incidental issues were presented by the parties, it is conceded that the issue above stated is the only one which could be dispositive of the cases on motion for summary judgment, and that, aside from this, the resolution of the differences between the parties must await a trial in each case on the merits. R.R. 4:58-3; Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67 (1954).
*72 In Jeffcott v. Erles the defendant Erles contacted the plaintiff, a licensed realtor trading as Jeffcott Realty Investment Company, for the purpose of listing with the plaintiff for sale a tract of land owned by the defendant. A listing agreement was signed by the parties on November 15, 1961, wherein the defendant granted to the plaintiff the "exclusive right to sell said property" until November 15, 1962 and agreed to pay a commission of 10% of the gross sale price in the event said property or any portion thereof should be "sold or exchanged" by the plaintiff "or any other person" during the term of the contract.
On November 10, 1962 the defendant signed an agreement of sale between himself as seller and Marion G. Jeffcott, wife of the plaintiff, as buyer whereby he agreed to sell the tract for the sum of $4,200. The agreement was drawn by the plaintiff Jeffcott. It appears from pretrial depositions that the plaintiff had succeeded in interesting one Beaver in the purchase of the tract, but that Beaver's interest was conditioned upon the removal of certain trailers from the property. Since the period of the exclusive listing agreement was about to expire, plaintiff drew the agreement in question, with the intent of having the sale by the defendant carried out, thus earning his commission, and then reselling the tract to Beaver at the same price.
The defendant, being unable or unwilling to procure the removal of the trailers, subsequently refused to carry out the agreement of sale and the transaction was never completed. Plaintiff then sued for his commission on the ground that he had performed his listing agreement according to its terms.
In Faherty v. Becker the plaintiff real estate broker on March 26, 1963 entered into an exclusive listing agreement with the defendant for a period of six months, covering the sale of premises which the defendants were themselves purchasing under an installment contract from the Veterans Administration. The listing agreement called for payment by the seller to the realtor of a commission of 6% if the property or any part thereof should be sold or exchanged by the broker. *73 On April 28, 1963 the plaintiff produced prospective purchasers for the property, namely Daniel C. Van Orden and Marie Van Orden, his wife. The plaintiff prepared an agreement of sale and arranged for its execution by the sellers and buyers. Neither the seller nor purchasers, at this stage, had the advice of attorneys.
The defendants subsequently refused or failed to perform because they could not arrange to be relieved of their obligation under their instalment contract with the Veterans Administration. Plaintiff's demand for payment of a commission being refused, this suit followed.
The principal ground upon which the defendants contend that summary judgment of dismissal should be granted in both these actions is the proposition that, since in each case the plaintiff real estate broker prepared the agreement of sale (which constitutes the unauthorized and unlawful practice of law), the real estate brokers are thereby barred from the right to claim and collect commissions. Defendants rely on the holding of the Supreme Court in N.J. State Bar Association v. Northern New Jersey Mortgage Associates, 22 N.J. 184, (1956), modified by the court's opinion in 32 N.J. 430 (1960).
In that case it appeared that title insurance and mortgage companies engaged in certain activities incident to and in furtherance of their business, including the preparation of deeds, notes, bonds, mortgages, affidavits and other instruments affecting title to real estate, and the rendering of services in the removal of objections to or clouds upon titles, for which services they received compensation under the heading of "search and title abstracting." It was shown that charges billed under this head far exceeded the actual cost of the search and abstract. The Supreme Court, in the two opinions above cited, held that these activities constituted the unlawful and unauthorized practice of law and that they should be permanently enjoined.
The cases sub judice present another facet of the problem of unauthorized practice  one with which the court in the *74 Northern New Jersey Mortgage Associates cases was not called upon to deal. Here the defendants take the simple yet drastic position that a real estate broker by the preparation of an agreement of sale between a prospective seller and a prospective buyer engages in the unauthorized practice of law and thereby forfeits altogether his right to a commission. Defendants maintain that this is so whether or not there was contemplated any compensation to the brokers for their services over and above their customary sales commissions.
That the preparation of these agreements of sale by the plaintiffs constituted the practice of law by persons unauthorized to engage in such practice there can be no doubt. N.J. State Bar Ass'n v. Northern N.J. Mortgage Association, 22 N.J. 184, 196 (1956). Moreover these cases would seem aptly to illustrate the need for proscribing such practice by those not trained in the law. As stated by Chief Justice Vanderbilt in Northern N.J., 22 N.J., at p. 195:
"* * * admission to our bar is a privilege granted in the interests of the public to those who are morally fit and mentally qualified, solely for the purpose of protecting the unwary and the ignorant from injury at the hands of persons unskilled or unlearned in the law."
Both of the instruments here prepared by these plaintiffs seem on examination to reflect the hand of the unskilled and ignorant draftsman. There was a failure of performance of the agreement in each case. Whether such failure resulted because of lack of care and skill in preparing the agreement and the consequent failure of the agreement accurately to set forth the intent of the parties, is in each case a matter of fact to be established at trial.
But whereas in the Northern New Jersey cases it clearly appeared that the defendant Title Company performed legal services and charged fees therefor under the denomination of "search and title abstracting" (32 N.J., at pp. 434, 435), in the instant case it is not made to appear that the plaintiff brokers received or sought any compensation other than the customary brokerage commissions based upon a percentage of *75 the sale price agreed upon in advance and set forth in the listing agreements.
As a general rule, a real estate broker earns his commission when, pursuant to a written agreement, he produces a buyer able and willing to purchase the property on terms satisfactory to the seller. Brenner & Co. v. Perl, 72 N.J. Super. 160 (App. Div. 1962). Whether that was done here is in each of the cases under consideration a question of fact which cannot be decided on the present motion. Assuming that the requirements of the general rule are otherwise satisfied, does the single fact that the broker  in each case a non-lawyer  prepared the agreement of sale result in the forfeiture of his commission?
The Supreme Court in the Northern New Jersey cases did not pass on this question. To answer it in the affirmative on these motions would, in my opinion, be to invade the legislative or rule-making field  something obviously beyond the power and authority of this court. The Northern New Jersey cases enumerated the power of the courts to enjoin the unauthorized practice of law, 22 N.J., at p. 194. The Legislature condemns and penalizes as disorderly conduct such unauthorized practice, N.J.S. 2A:170-78 et seq.
It should here be noted in passing that N.J.S. 2A:170-81(d) excepts from the condemnation of unauthorized practice:
"The drawing of deeds, bonds, mortgages, leases, releases, agreements or assignments by a licensed real estate broker or any one employed by him."
That such exception is violation of Art. VI, Sec. II, par. 3 of the Constitution is clearly established by Chief Justice Vanderbilt's opinion in Northern N.J., 22 N.J., at p. 198. But neither the Supreme Court nor the Legislature has seen fit to decree that one such unlawful act shall operate to forfeit compensation otherwise rightfully earned.
The other authorities cited by the defendants do not lead to the result here contended for.
*76 It is true that the courts will not enforce illegal agreements. Slater v. Gittelman, 104 N.J. Eq. 172 (E. & A. 1929). But the agreements here sought to be enforced are "listing agreements" between seller and broker and on their face are not illegal.
In Stack v. P.G. Garage, 7 N.J. 118 (1951) a broker made an agreement to perform legal services for another in the prosecution of a tax appeal. It was properly held that the broker was not entitled to be paid for his services  the rendering of which was itself unlawful.
Likewise in Appell v. Reiner, 81 N.J. Super. 229 (Ch. Div. 1963), the service contracted for was itself illegal, consisting of the practice of law by one not licensed to carry on such practice in our State.
These cases are not apposite to the present situation. The services here contracted for were the usual services of a licensed real estate broker. Although in each case the broker appears to have illegally practiced law in preparing the agreement of sale, this was not a necessary ingredient of the broker's services; moreover, as previously stated, it does not, at this stage, appear that any fee was charged therefor over and above a broker's usual and customary compensation.
Whether the totality of the proofs in each of these cases will disclose that the broker has met the requirements for earning his commission, or whether in either case the broker, by his negligent and unskilled preparation of the agreement of sale, produced a situation which led to misunderstanding and resulting nonperformance, and so may be concluded not to have earned his commission, are matters to be determined at trial. But this court does not feel that upon these motions it has been made to appear palpably that the defendants, by reason of the single illegal act of preparation of the sales agreement by the broker, standing alone and by itself without proof of the consequences of that act, are entitled to summary judgment of dismissal as a matter of law. R.R. 4:59-3.
For the foregoing reasons the motion for summary judgment is, in each case, denied.