COZY PINE HUNTING PRESERVE, INC., A NEW JERSEY CORPORATION, PETITIONER, v. FISH AND GAME DIVISION OF THE DEPARTMENT OF CONSERVATION AND ECONOMIC DEVELOPMENT OF THE STATE OF NEW JERSEY, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued February 15, 1965—Decided March 12, 1965.

Before Judges GOLDMANN, SULLIVAN and LABRECQUE.

*Mr. William Gallner* argued the cause for petitioner.

*Mr. John C. Love* argued the cause for defendant (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney; *Mr. Remo M. Croce,* Deputy Attorney General, of counsel).

The opinion of the court was delivered by

SULLIVAN, J. A. D. This is an original petition for declaratory judgment under *R. R.* 4:88–10. Petitioner Cozy Pine Hunting Preserve, Inc., a New Jersey corporation (petitioner), is the owner and operator of a private hunting preserve in Salem County. Defendant is the Fish and Game Division of the Department of Conservation and Economic Development of the State of New Jersey (Division).

In essence, petitioner's grievance is that the Division is by law given jurisdiction only over game which roam the public woods and fields and has exceeded its power and authority in holding that petitioner's private hunting preserve and the

game stocked therein are subject to the control of the Division and the fish and game laws of this State.

Petitioner's hunting preserve is about 423 acres in size and is completely surrounded by a heavy-duty wire fence eight feet in height. The fence, which is some five miles in length, also has two strands of barbed wire at the bottom and nine strands of barbed wire at the top, plus an additional one-inch heavy duty poultry wire. Petitioner is the holder of license 35-CS, issued by the Division pursuant to *N. J. S. A.* 23:3–29(d), under which it may operate a commercial pheasant, wild turkey, quail or partridge-shooting preserve. It holds a propagating license 310P, issued by the Division under *N. J. S. A.* 23:3–29(a), for deer, pheasant and raccoon. Petitioner stocks the preserve with its own deer.

Petitioner concedes that game birds and fowl cannot be kept in or excluded from its preserve merely by the presence of a fence, and that the Division would have limited jurisdiction over its preserve insofar as game birds and fowl are concerned.

However, petitioner argues that since the fencing around its preserve effectively prevents stocked quadrupeds from escaping from the preserve, or native wild quadrupeds from getting into the preserve, the Division lacks jurisdiction over the preserve as to the stocking or hunting of such quadrupeds.

This litigation was generated when the Division made rulings that persons hunting on petitioner's preserve were required to obtain regular hunting licenses, and would not be permitted to hunt with rifles. The Division also refused to grant permission to import wild boar and release the same on petitioner's hunting preserve on the ground that such importation and release would present a hazard to agriculture and to the public.

Preliminarily, we conclude that the procedure employed to bring this matter on for hearing before us was improper. Petitioner has proceeded under *R. R.* 4:88–10 which provides for an original review by this court of the validity of any administrative rule promulgated by any state administra-

tive agency. The instant controversy is not over rules promulgated by the Division but rather with rulings made by it as to the applicability of the fish and game laws to petitioner's hunting preserve. The correct procedure should have been by appeal from the final decision or action of the state administrative agency pursuant to *R. R.* 4:88–8(a). As noted in *Carls v. Civil Service Commission of N. J.*, 17 *N. J.* 215 (1955), proceedings under *R. R.* 4:88–8(a) are designed to deal with so-called *quasi*-judicial decisions or actions adjudicating the rights of particular individuals, whereas *R. R.* 4:88–10 was designed to deal with so-called *quasi*-legislative rules governing future conduct generally. However, since the matter is before us without any objection from the Division or claim of prejudice, and is ripe for decision, we will treat it as an appeal and pass upon the merits.

We conclude that the rulings made by the Division were correct and should be affirmed.

■ The requirement for a hunting license is set forth in *N. J. S. A.* 23:3–1 which provides:

"No person shall at any time hunt for, take, kill or pursue, with a gun or any firearm of any kind or character, * * * a wild bird, animal or fowl, * * * unless he has first procured a proper license."

The foregoing language is plain and unambiguous. The only exceptions to the broad sweep of the requirement are specifically stated in the statute, namely, a resident of this State while on active duty with any branch of the armed service of the United States; or the occupant of a farm in this State who actually resides thereon, or the immediate members of his family who also reside thereon, while hunting on the farm. However, no exception is made for private hunting preserves, and petitioner has not established any proper basis for reading one into the statutory plan.

*State v. Biggs*, 117 *N. J. L.* 240 (*E. & A.* 1936), relied on by petitioner, is not apposite. There the court assumed that the Legislature had the power to regulate fishing in a private pond, but held that the pertinent statute did not disclose a

legislative purpose to make its licensing provisions applicable to "private waters" as then defined in the statute.

Not so with hunting. The propagation of game statute, *R. S.* 23 :3–28 *et seq.*, as amended, permits the propagation of game in a wholly inclosed preserve upon obtaining the proper license from the Division. *N. J. S. A.* 23 :3–29(a). As heretofore noted, petitioner holds such a license. *R. S.* 23 :3–31 provides for the killing of game (including deer) in such a wholly inclosed preserve at any time, but adds: "Nothing in sections 23 :3–28 to 23 :3–39 of this title, *shall alter or supersede the laws requiring a license to hunt.*" (Emphasis added)

Petitioner argues that in any event the prohibition applies only to the hunting of wild animals, and that the animals inclosed in its fenced preserve are not to be considered in that category. Suffice it to say that we find the attempted distinction unrealistic so far as application of the game laws is concerned.

We next consider the contention that the Division has no power to prohibit the use of rifles for hunting on petitioner's private preserve.

The general prohibition against hunting with a rifle is contained in *N. J. S. A.* 23 :4–13. The prohibition is specifically expressed as to deer hunting in *N. J. S. A.* 23 :4–44, which provides:

"* * * no person engaged in hunting for wild deer shall use or carry a rifle of any kind or description, * * *."

Petitioner's argument is that the general provision against hunting with a rifle contained in *N. J. S. A.* 23 :4–13 has been superseded, insofar as the hunting of deer is concerned, by *N. J. S. A.* 23 :4–44, quoted above. It then argues that *N. J. S. A.* 23 :4–44 is inapplicable to hunting deer on a private preserve by virtue of the last paragraph of *N. J. S. A.* 23 :4–43, which states:

"This article shall not apply to deer killed on game preserves, the owners or lessees of which are licensed by the division * * *."

Both *N. J. S. A.* 23 :4–43 and 23 :4–44 are part of *article* 7, *chapter* 4, *Title* 23, relating to "DEER."

We are unwilling to accept this argument.

The original "Act for the protection of deer" was *L*. 1912, *c*. 178. Section 1 of that act made it unlawful to hunt for or kill any wild deer except during the season fixed therein, or to hunt for or kill a doe or antlerless deer at any time. Section 2 made it unlawful to have in possession any deer except during the season fixed in paragraph 1, or to have in possession a doe or anterless deer at any time. Such possession was made *prima facie* evidence in all courts and places of the fact that such wild deer or doe was in possession unlawfully. The section then concluded :

*"Provided*, that this act shall not apply to deer killed on game preserves, the owners or lessees of which are licensed by the Board of Fish and Game Commissioners, or to deer coming from another State, which is properly tagged showing where the same was killed."

Section 3 of the act made it unlawful to hunt wild deer with a rifle. Section 4 made it unlawful to hunt wild deer except by daylight. Section 5 made it unlawful to hunt wild deer with a dog or dogs.

From the foregoing, the subject matter considered, the context, the positioning of the proviso at the end of section 2, it is clear that such proviso applied only to section 1, which established a season for hunting and killing deer, and section 2, which made possession of deer out of season *prima facie* unlawful, the reason for the proviso being that under *R. S.* 23 :3–31, mentioned *supra*, deer raised in a wholly inclosed game preserve may be killed at any time.

In the statutory revision effected in 1937, the "Act for the protection of deer," as amended, became *article* 7, *chapter* 4 of *Title* 23 ; *R. S*. 23 :4–42 to 48. The proviso, *supra,* is now contained in *N. J. S. A.* 23 :4–43 and reads : "This *article* shall not apply \* \* \*." (Emphasis added) However, the same limitation upon the scope of the proviso is equally apparent.

■ This aside, it is common knowledge that a rifle bullet will carry a great distance. The dangers attendant upon the use of a rifle while hunting are the same, whether it is done in public areas or private preserve. We cannot believe that the Legislature would generally ban as dangerous the use of a rifle for any kind of hunting, and at the same time allow deer to be hunted with a rifle on a private preserve.

Our conclusion is that the statutory bans against hunting with a rifle, and specifically hunting deer with a rifle, apply to petitioner's private preserve.

■ Finally, we consider the claim that the Division has no power to bar petitioner from stocking its preserve with wild boar. *N. J. S. A.* 23 :4–63.3 confers upon the Division power to adopt regulations, *inter alia,* to prohibit the release, liberation or distribution of any mammals into the fields, woodlands or marshes of this State which it has reason to believe will menace, damage or consume argicultural crops or create a hazard to the welfare of the citizens of this State. Petitioner again argues that the Division's jurisdiction over the release, liberation or distribution of game is limited to public woods and fields or private lands that are unfenced. Petitioner does not dispute the Division's determination that wild boar, running at large, represent a hazard to agriculture and to the public. Rather, the argument is that since these animals will be released only within petitioner's preserve, the matter is beyond the Division's control. Petitioner argues that in view of its fencing there is no factual basis for a determination that the proposed release of these animals would present a hazard to agriculture or to the public.

We cannot agree. No fence is escape-proof, particularly when one is concerned with wild boar, admittedly a strong, rooting type of animal. Beyond this, hunters and other persons on the preserve would be subjected to danger by the presence of these animals. We conclude that the statutory provision, *supra,* applies to wholly inclosed preserves and that the Division acted within its powers in prohibiting the stocking of this kind of animal on the preserve.

Petitioner has not challenged the right of the Division under *N. J. S. A.* 23 :4–63.3 to act other than through regularly adopted regulations.

Affirmed.