126 N.J. Super. 239 (1974)
313 A.2d 808
HARRY BONNETT, ET AL., PLAINTIFFS-RESPONDENTS,
v.
STATE OF NEW JERSEY; WILLIAM T. CAHILL, GOVERNOR OF THE STATE OF NEW JERSEY; JOSEPH M. McCRANE, JR., TREASURER OF THE STATE OF NEW JERSEY; RAYMOND H. BATEMAN, PRESIDENT OF THE NEW JERSEY STATE SENATE; THOMAS H. KEAN, SPEAKER OF THE GENERAL ASSEMBLY OF THE STATE OF NEW JERSEY; ROBERT CLIFFORD, COMMISSIONER OF THE DEPARTMENT OF INSTITUTIONS AND AGENCIES OF THE STATE OF NEW JERSEY; AND EDWARD B. McCONNELL, DIRECTOR OF THE ADMINISTRATIVE OFFICE OF THE COURTS OF THE STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 11, 1973.
Decided January 9, 1974.
*240 Before Judges CARTON, SEIDMAN and DEMOS.
*241 Mr. Richard M. Conley, Deputy Attorney General, argued the cause for appellants (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney; Mr. Morton I. Greenberg, Assistant Attorney General, of Counsel and on the brief).
Mr. William L. Brach argued the cause for respondents (Messrs. Brach, Eichler, Rosenberg & Silver, attorneys; Mr. William H. Eaton, on the brief).
Mr. David G. Lubell of the New York Bar, argued the cause for intervenor-respondent League of Women Voters of New Jersey (Mr. William J. Bender, attorney).
The opinion of the court was delivered by SEIDMAN, J.A.D.
Pursuant to leave granted, defendants appeal from the denial of their motion to dismiss the complaint.
Plaintiffs, who are residents and taxpayers of Essex County, filed a class action under R. 4:32-1 et seq. as representative parties of (1) owners of real property in the county, (2) black residents, (3) low-income residents, and (4) property owners "with lost or jeopardized equities." The nine-count complaint challenged the allegedly inequitable tax system in New Jersey insofar as it related to (1) categorical public assistance, (2) the courts, and (3) supporting agencies in the administration of justice.
The thrust of the complaint is that the individual plaintiffs, as well as the county and the municipalities within it, are unconstitutionally discriminated against by reason of a system whereby certain expenses are allocated for payment by real estate taxes assessed within the county, rather than allocated on an equal state-wide basis with a resultant disproportionate and inequitable burden on the residents of the county.
Subsequently, the League of Women Voters of New Jersey was permitted to intervene as a party plaintiff.
*242 Defendants moved for a dismissal of the complaint on the ground that it failed to state a claim upon which relief may be granted. The court below denied the motion, holding that an issue was raised whether there was "a reasonable or rational justification for the New Jersey system of providing welfare assistance and the judiciary, as required by the equal protection clause."
It is thoroughly established that in dealing with the legal sufficiency of a complaint "the plaintiff is entitled to to a liberal interpretation of its contents and to the benefits of all its allegations and the most favorable inferences which may be reasonably drawn from them." Rappaport v. Nichols, 31 N.J. 188, 193 (1959); Di Christofaro v. Laurel Grove Memorial Park, 43 N.J. Super. 244, 252 (App. Div. 1957); Winkler v. Hartford Acc. & Ind. Co., 66 N.J. Super. 22, 25 (App. Div. 1961). See also P & A Const. Inc. v. Hackensack Water Co., 115 N.J. Super. 550, 551 (Law Div. 1971); Young v. Gilbert, 121 N.J. Super. 78, 82 (Law Div. 1972).
While defendants do not question this rule, they argue that the recent cases of San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), and Robinson v. Cahill, 62 N.J. 473 (1973), decided after the disposition of the motion below, are controlling and mandate a reversal and a dismissal of the complaint. We do not agree.
We recognize from Rodriguez that in determining the validity under the equal protection clause of the Fourteenth Amendment of a state's statutory scheme for the local financing of public services which results in substantial disparities in per capita expenditures because of variations in the amount of local taxable properties, the standard of review is not that of strict judicial scrutiny requiring a showing of compelling state interest, unless fundamental constitutional rights are involved. 411 U.S. at 16, 93 S.Ct. at 1287, 36 L.Ed.2d at 33. Rather, the standard is that the system be shown to bear some rational relationship to a legitimate state purpose. 411 U.S. at 40, 93 S.Ct. at 1300, *243 36 L.Ed.2d at 47; and, if it does, the Fourteenth Amendment does not require absolute equality or precisely equal advantage. 411 U.S. at 24, 93 S.Ct. at 1291, 36 L.Ed.2d at 37, U.S. Const., Amend. 14.
To this extent, Robinson v. Cahill, supra, is in accord; but as our Supreme Court observed, Rodriguez does not say that there could never be a successful equal protection attack where a State has called upon local government to participate in the rendition of a public service. 62 N.J. at 488. The court in Robinson v. Cahill chose not to rest its decision on the equal protection concept of either the Federal or the State Constitution, but relied, instead, on the public education provision of the State Constitution. N.J. Const. (1947), Art. VIII, § 4, par. 1. It pointed out, however, that even though there might not be a federal constitutional flaw, it was for the State to decide whether "the equal protection demand of our State Constitution is offended." 62 N.J. at 490.
The court made the following significant comments, even though as obiter dictum: 62 N.J. at 499-500:
* * * It is undeniable that local expenditures per pupil do vary, and generally because other essential services must also be met out of the same tax base and the total demands exceed what the local taxpayers are willing or able to endure. But for that same reason similar discrepancies, both as to benefits and burdens, can be found with respect to the other vital services which the State provides through its local subdivisions. The equal protection proposition potentially implicates the basic tenet ... that there be local authority with concomitant fiscal responsibility. The case now before us was not tried or argued in terms that local government as a political institution denies equal protection in New Jersey because unequal demands upon unequal tax bases result in statewide inequality as to benefits or as to tax burden. In these circumstances we will not pursue the equal protection issue in the limited context of public education.
Nor do we consider a question the parties have not projected, whether, apart from the equal protection guarantee, there is an implicit premise in the concept of local government that the State may not distribute its fiscal responsibility through that vehicle if substantial inequality will result. It may well be that at one time there was a rough correlation between the needs of an area and the local resources to meet them so that there was no conspicuous unfairness *244 in assigning State obligations to the local units of government. Surely that is not true in our State. Problems are now mobile. They have settled intensively in limited areas. Statewide there is no correlation between the local tax base and the number of pupils to be educated, or the number of the poor to be housed and clothed and fed, or the incidence of crime and juvenile delinquency, or the cost of police or fire protection, or the demands of the judicial process. Problems which are in no sense local in origin have become the special burden of those who cannot find a haven elsewhere. [62 N.J. at 499-500]
The court recognized the consequences of a successful challenge to the State's system of distributing its fiscal responsibility through the vehicle of local government:
We need hardly suggest the convulsive implications if home rule is vulnerable upon either of the grounds to which we have referred. Nor need we expound the difficulties of management of judicial solutions if the problem must be met by the courts. We point to the dimensions of the subject to explain why we should not deal with it on the record of this case.
Despite the above, the court has not ruled out the potential formulation of a cause of action which would squarely confront the court with the issues projected.
This is what the complaint in this case seeks to do. Although plaintiffs charge that they and those they represent have been deprived of equal protection of the laws and due process under both the Federal and State Constitutions, their grievance more broadly is that the county in which they reside has been unfairly and inequitably burdened with a disproportionate share of the cost of the enumerated state functions. In effect, they claim not only "unequal tax basic result[ing] in statewide inequality as to benefits or tax burdens," but also a distribution by the State of its fiscal responsibility in such manner as to result in substantial inequality.
Obviously, plaintiffs have the burden of establishing that the system complained of is unjust and results in illegal discrimination. Ring v. North Arlington, 136 N.J.L. 494, 498 (Sup. Ct. 1948), aff'd o.b. 1 N.J. 24 (1948). Defendants *245 have not demonstrated that such a showing is impossible, nor have they established as a matter of law that there is a reasonable and fair justification for the alleged inequities and discrimination which plaintiffs seek to prove.
Taking the facts as pleaded and considering the current state of the law in this area, we are satisfied that plaintiffs have presented questions of such a serious and substantial nature as to require development at a plenary trial.
Affirmed.