144 N.J. Super. 411 (1976)
365 A.2d 956
NEW JERSEY OPTOMETRIC ASSOCIATION, PLAINTIFF,
v.
HILLMAN-KOHAN EYEGLASSES, INC., VORNADO, D/B/A NOBLE OPTICS, INC. & D/B/A NOBLE EYEGLASSES, COMMUNITY OPTICIANS, $7.00 EYEGLASSES, NEW JERSEY CORP., D/B/A COMMUNITY OPTICIANS, AARON ABRAMS, LOUIS R. ALONGE, FRANK S. ANGELINI, RICHARD S. APPEL, RUSSELL H. ARONDS, MARKUS I. BARTH, BURTON C. BLAUROCK, GERALD BLUMBERG, EDWARD J. COGAN, JR., JONAS DIETZ, ROBERT M. EPSTEIN, CHARLES ALLEN FALKOWITZ, JEROME FEINSTEIN, MICHAEL CARL FEINSTEIN, IRWIN GLADSTONE, DOUGLAS N. GLAZER, RICHARD M. KAPLAN, THEODORE KATZ, JEFFERY I. KAUFMAN, RONALD S. KOWALIK, SEYMOUR KURTZ, JOSEPH LEHRMAN, HARRY A. LEVINE, RICHARD A. LEVINE, ROBERT C. MORENSTEIN, MARTIN OXENHORN, ISRAEL R. PLASNER, JEFFERY J. RUFFO, TERRY RAYMOND SCHEID, STUART SCHIFFMAN, BRUCE ALLEN SCHUSTER, ARNOLD SHAPIRO, LAWRENCE G. SHAPIRO, WAYNE TUDOR, RALPH P. VEND, RALPH WEISS, CHARLES L. ZOLOT, WILLIAM F. HYLAND, THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, AND THE NEW JERSEY STATE BOARD OF OPTOMETRISTS, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided September 28, 1976.
*413 Mr. Seymour Margulies for the plaintiff (Messrs. Brigadier & Margulies, attorneys; Mr. Max Spinrad, associate attorney).
Mr. Clive S. Cummis for defendant Hillman-Kohan, Inc. (Messrs. Sills, Beck, Cummis, Radin & Tischman, attorneys; Mr. Jerold D. Baranoff on the brief).
Mr. Jack Dashosh for defendant Vornado, d/b/a Noble Optics, Inc. & d/b/a Noble Eyeglasses.
Mr. Joseph Schoenholz for defendant Community Opticians, $7.00 Eyeglasses, d/b/a Community Opticians.
Mr. Bruce R. Fadem for defendants Aaron Abrams, Louis R. Alonge, Frank S. Angelini, Richard S. Appel, Russell H. Aronds, Markus I. Barth, Burton C. Blaurock, Gerald Blumberg, Edward J. Cogan, Jr., Jonas Bietz, Robert M. Epstein, Charles Allen Falkowitz, Jerome Feinstein, Michael Carl Feinstein, Douglas N. Glazer, Jeffery I. Kaufman, Seymour Kurtz, Joseph Lehrman, Harry A. Levine, Richard A. Levine, Robert C. Morenstein, Martin Oxenhorn, Bruce Allen Schuster, Arnold Shapiro, Lawrence G. Shapiro, Wayne Tudor, Ralph P. Vend and Charles L. Zolot (Messrs. Budd, Larner, Kent, Gross & Picillo, attorneys).
*414 Mr. Sanford Kluger for defendant Richard M. Kaplan.
Mr. Richard Galex for defendants Israel R. Plasner and Jeffery J. Ruffo (Messrs. Heilbrunn, Finkelstein, Heilbrunn, Garrutto & Galex, attorneys).
Mr. Gene Schiffman for defendants Stuart Schiffman, Ronald S. Kowalik and Terry Raymond Sheid (Messrs. Schiffman & Schiffman, attorneys).
Ms. Inez M. Staniziale for defendant Ralph Weiss.
Ms. Beatrice Levidow for defendants William F. Hyland, Attorney General of the State of New Jersey and New Jersey State Board of Optometrists (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
Mr. Jonas Dietz, pro se.
KENTZ, J.S.C.
Plaintiff New Jersey Optometric Association (Association) has brought suit against a multitude of defendants alleging, among other things, violations of N.J.S.A. 45:12-1 et seq. (Optometry Act), N.J.S.A. 52:17B-41.1 et seq. (Optician Act), N.J.S.A. 56:9-1 et seq. (Antitrust Act), unfair competition, fraud and governmental inaction. The Association is a nonprofit corporation whose membership consists of more than 500 optometrists licensed to practice optometry in the State of New Jersey. The Association seeks both injunctive relief and monetary damages on behalf of itself and its members.
The list of defendants can be categorized into three main groups. The first is composed of three corporations, Hillman-Kohan Eyeglasses, Inc.; Vornado, d/b/a Noble Optics, Inc. and d/b/a Noble Eyeglasses; and Community Opticians, $7.00 Eyeglasses, Inc. (hereinafter collectively referred to as corporate defendants). The second group consists of 37 *415 individual optometrists (hereinafter collectively referred to as individual defendants). The third group consists of the Attorney General of the State of New Jersey and the New Jersey State Board of Optometrists (Board) (sometimes jointly referenced as public defendants).
The immediate focus of this court is on the several motions of all the defendants to dismiss the complaint. The proffered grounds for dismissal of the complaint are several. For the sake of clarity and legal analysis I will address myself to the various motions separately as they relate to the three groups of defendants delineated above.
Initially, we must look to see of what the Association complains. The complaint is drafted in 13 counts. The basic thrust of the complaint as it relates to the individual defendants and corporate defendants is that they have entered into a commercial relationship which is in violation of N.J.S.A. 45:12-1 et seq. and N.J.A.C. 13:38-1 et seq. and the Association and its membership is injured thereby. More specifically, the Association charges that this relationship and the activities pursuant thereto violate N.J.S.A. 45:12-11, 19, 19.1.[1] It is contended that these alleged illegal acts constitute a fraud on the public, denigrate the professional standards of the practice of optometry in New Jersey, are tortious as against the Association and its membership, cause unjust enrichment and also violate the New Jersey Antitrust Act, N.J.S.A. 56:9-1 et seq.
Count five of the complaint alleges that the Board has arbitrarily rejected numerous requests of the Association for the Board to take the necessary and proper steps provided by statute to halt the illegal and improper activities of the individual and corporate defendants.[2] The Association wants *416 the court to direct the Board to institute proceedings on the Association's complaints pursuant to N.J.S.A. 45:12-12.
The sixth count is directed against the Attorney General. It basically iterates the relief requested in the fifth count because of the fact that the office of the Attorney General is the counsel to the Board and brings all necessary judicial proceedings on behalf of the Board.

I
The public defendants move to dismiss the complaint on the ground that this court lacks jurisdiction of the subject matter and that the action is not timely filed. This argument is premised on the public defendants' view that the action of plaintiff is in reality an appeal from a final decision of a state administrative agency which, as such, must be filed in the Appellate Division and within 45 days of that final action. R. 2:2-3(a)2; R. 2:4-1(b). In order to clearly understand the basis on which the public defendants premise their argument some background is necessary. This background material is revealed in two affidavits submitted by the Attorney General in addition to the facts set forth in its brief sworn to be true. Although the instant motion is for a dismissal of the complaint and as such all facts pleaded are construed in favor of plaintiff, the court makes reference to the facts stated in these affidavits only for the limited purpose of constructing some sort of framework in which to analyze the public defendants' motion.[3]
*417 It appears that the Association has been presenting complaints to the Attorney General and the Board for some time now concerning the alleged illegal relationship between the individual defendants and the corporate defendants. By letter of April 9, 1975 the Attorney General's office notified the Association (through its counsel) that the investigation of the Association's complaints had led to complaints being filed with the Board "in the eye care facet of the investigation" but "that there is neither a proper basis in law or in the facts which we have reviewed upon which to bottom a complaint charging a violation of the optometry statute or to justify a `rule-making' investigation by the Board of Optometrists." After the Association voiced its displeasure of the Attorney General's opinion the Board acceded to the Association's request that the Board consider the charges anew. By letter of October 31, 1975 the Board affirmed the content of the Attorney General's letter of April 9, 1975. The Association now complains that this action by the Attorney General and the Board is arbitrary.
The public defendants take the position that the determination by the Board not to take any further action regarding the alleged violations of the Optometry Act presented to it by the Association is a final decision of a state administrative agency and hence reviewable only in the Appellate Division. R. 2:2-3(a)2. Johnson v. N.J. State Parole Bd., 131 N.J. Super. 513 (App. Div. 1974); Princeton First Aid Squad v. Division on Civil Rights, 124 N.J. Super. 150 (App. Div.), certif. den. 63 N.J. 555 (1973). The Association maintains that the decision of the Board not to issue complaints in the subject area is not a final decision or action from which an appeal may be had in the Appellate Division. The Association contends that its action is one of mandamus seeking this court to order the Board to undertake proceedings which will result in a decision or action which is final. Garrou v. Teaneck Tryon, 11 N.J. 294 (1953); Pfleger v. N.J. State Highway Dept., 104 N.J. Super. 289 (App. Div. 1968). The Association *418 also asserts that review in the Appellate Division is intended only to cover quasi-judicial decisions or actions. Cozy Pine Hunting Preserve, Inc. v. Fish & Game Division, 87 N.J. Super. 84 (App. Div. 1965). In the alternative, the Association urges that if this court declines jurisdiction of the matter it should transfer the case to the Appellate Division rather than dismiss it. R. 1:13-4; De Nike v. Bd. of Trustees, 34 N.J. 430 (1961).
Subsequent to the hearing in this matter the Appellate Division rendered its decision in the case of State v. Council of N.J. State College Locals, 141 N.J. Super. 470 (App. Div. 1976). The views expressed in that opinion appear to be dispositive of the present jurisdictional question. In that case a teachers' union appealed from a decision of the Public Employment Relations Commission (PERC) which affirmed the decision of its executive director in deciding not to issue an unfair practice complaint against the State. The teachers' union had filed an unfair practice charge with PERC in the hope that PERC would issue a complaint thereon. No hearing was held although there were "exploratory conferences" with the parties. In contrast to the argument at bar, PERC argued that its decision not to issue the unfair practice complaint was unreviewable by the court. The per curiam opinion states:
We hold that the refusal by PERC to issue a charge of unfair labor practice is reviewable pursuant to R. 2:2-3(a)2. [at 474-475]
The facts before me are strikingly similar to State v. Council of N.J. State College Locals, supra. The Association has lodged charges with the Board in the hope that it would issue complaints based on the charges. The Board has decided that complaints are not warranted. The Association then seeks judicial review of that decision not to issue complaints. The review sought should be in the Appellate Division pursuant to R. 2:2-3(a)2.[4] Accordingly, the fifth *419 and sixth counts of the complaint are dismissed for lack of jurisdiction. I will not address the question of a timely appeal. This issue should also be presented to the Appellate Division.[5]

II
The corporate defendants' motions to dismiss the complaint generally urge three reasons for the dismissal: (1) the Association is not a proper party nor does it have standing to bring an action for damages suffered not by it but by its members who are not parties herein; (2) neither the Association independently nor derivatively from its members can enforce alleged violations of the Optometry Act by injunction since they do not lie within the zone of interests sought to be protected by the enactment of the statute, and (3) plaintiff is barred from its asserted cause of action on the basis that had it felt aggrieved from the decision of the Board failing to find a prima facie basis for the asserted violations, plaintiff should have appealed to the Appellate Division pursuant to R. 2:2-3(a) within 45 days of the letter of denial.
It is not necessary for the court to analyze and rule on all the reasons given in support of the corporate defendants' motions. It is my belief that the court's ruling on the second stated reason for dismissal will obviate the need for discussion on the other reasons. I am confining this immediate analysis to those counts of the complaint based on alleged violations of the Optometry Act or Optician Act by the corporate defendants.
The corporate defendants maintain that neither the Association nor its membership lie within the zone of interest *420 sought to be protected by the enactment of the Optometry Act.[6] It is their contention that the Optometry Act is aimed solely at protecting the public in the field of eye care treatment. They further argue that this statute does not bestow any property rights on the Association or any individual optometrist licensed under it. Any benefits that inure to the Association or to its members are only incidental to the primary purpose of safeguarding the public. Defendants cite as supportive of this view, Cole Nat'l Corp. v. State Bd. of Examiners, 57 N.J. 227 (1970); In re Weston, 36 N.J. 258 (1961); Reingold v. Harper, 6 N.J. 182 (1951); Abelson's, Inc. v. N.J. State Bd. of Optometrists, 5 N.J. 412 (1950); N.J. State Bd. of Optometrists v. S.S. Kresge Co., 113 N.J.L. 287 (1934), aff'd 115 N.J.L. 495 (E. & A. 1935); In re Lazarus, 81 N.J. Super. 132 (App. Div. 1963); N.J. State Bd. of Optometrists v. Koenigsberg, 33 N.J. Super. 387 (App. Div. 1954); Lipman v. Forman, 138 N.J. Eq. 556 (Ch. 1946); Mosig v. Jersey Chiropodists, Inc., 122 N.J. Eq. 382 (Ch. 1937). The Association places primary reliance on N.J. State Bar Ass'n v. Northern N.J. Mortgage Associates, 22 N.J. 184 (1956), in support of its right to maintain this action. Both sides also cite Crescent Park Tenants Ass'n v. Realty Equities Corp. of N.Y., 58 N.J. 98 (1971), for their respective positions.
There is no doubt that the primary purpose of the Optometry Act is to protect the public from incompetence, ignorance, fraud, etc., in connection with the care of the human eye. Abelson's, Inc. v. N.J. State Bd. of Optometrists and N.J. State Bd. of Optometrists v. Koenigsberg, supra. Any benefits that accrue to individual optometrists practicing pursuant to the statute are incidental and do not rise to the status of a property right which can be protected by a civil *421 suit in the courts of this State. Although no case in this State has expressly stated that the Optometry Act does not confer a property right on individual licensed optometrists enforceable through a judicial proceeding, other cases dealing with analogous regulatory schemes do support this view. See, e.g., Lipman v. Forman, supra (dentistry); Mosig v. Jersey Chiropodists, Inc., supra (chiropody). Moreover, cases in other jurisdictions have reached the same conclusion with the practice of optometry under the respective statutes. See, e.g., Delaware Optometric Corp. v. Sherwood, 36 Del. Ch. 223, 128 A.2d 812 (Del. Sup. Ct. 1957); N.H. Bd. of Registration in Optometry v. Scott Jewelry, 90 N.H. 368, 9 A.2d 513 (Sup. Ct. 1939). The issue was not decided in Jaeckle v. L. Bamberger & Co., 119 N.J. Eq. 126 (Ch. 1935), which involved a suit by individual licensed optometrists to restrain a corporation from violating the act regulating the practice of optometry. Vice-Chancellor Bigelow dismissed the suit on the grounds that the defendant was not practicing optometry within the meaning of the statute. The Court of Errors and Appeals, however, in affirming that decision expressly reserved the question of jurisdiction of equity to grant the relief sought. Jaeckle v. L. Bamberger & Co., 120 N.J. Eq. 201 (E. & A. 1936). It is noteworthy that it was Vice-Chancellor Bigelow who decided Mosig v. Jersey Chiropodists, Inc., supra, in which he said:
The practice indicated by these cases has sprung up because enforcement of regulatory statutes is sometimes neglected by public authorities and is apt to be more vigorous if those who have a direct financial stake are permitted to prosecute. But the practice cannot be supported in principle and is contrary to the decisions of our state cited earlier in this opinion. The motion for an injunction will be denied for the reason that the statute, on which complainants sue, was not enacted for their benefit. [122 N.J. Eq. at 387]
If individual licensed optometrists have no right to sue for enforcement or violations of the Optometry Act, a fortiori an unincorporated organization comprised of the same optometrists has no standing to assert otherwise unassertable *422 rights. Therefore, all counts bottomed on violations of the Optometry or Optician Act insofar as they seek money damages are dismissed.[7]

III
Plaintiff attempts to justify or ground its standing to sue for violations of the Optometry Act by drafting its complaint in terms of protecting the public from denigration of the professional standards of the practice of optometry in the State of New Jersey and restoring public confidence therein which allegedly has been eroded by the acts of defendants. Plaintiff cites N.J. State Bar Ass'n v. Northern N.J. Mortgage Associates, supra, for the proposition that it does have standing to sue for violations of the Optometry Act in order to protect the public. In that case the N.J. State Bar Association and five individual attorneys brought suit to enjoin the defendants' alleged unauthorized practice of law. The trial judge entered summary judgment dismissing plaintiff's action on the ground that the Supreme Court of New Jersey had exclusive jurisdiction over the unauthorized practice of law. The Supreme Court reversed the decision of the trial court holding that the plaintiff N.J. State Bar Association had standing to sue and the the Superior Court had jurisdiction of the matter. It remanded the case to the trial court for a plenary hearing. In the course of its opinion the court discussed the distinction between enjoining defendants' acts where private property rights and irreparable harm are involved and where plaintiffs seek an injunction as protectors of the public's interest when no private rights are involved. "The considerations underlying the granting of injunctive relief differ in each case." 22 N.J. at 193. The court further noted:
*423 But the fact that no property or pecuniary interest is involved is no defense to a suit to enjoin the practice of a profession where the action is on the behalf of the public, State ex rel. Jackson v. Lindsay, 85 Kan. 79, 116 P. 207, 35 L.R.A., N.S. 810 (Sup. Ct. 1911); North American Ins. Co. v. Yates, 214 Ill. 272, 73 N.E. 423 (Sup. Ct. 1905), see also 28 Am. Jur. 349, and cf. In re Debs, 158 U.S. 564, 15 S.Ct. 900, 39 L.Ed. 1092, 1103 (1895), or where the plaintiff is capable and competent to protect the public interest, cf. Auerbacher v. Wood, 139 N.J. Eq. 599, 600 (Ch. 1947). Nor will it be granted to those who proceed under the outward pretense of a public service, motivated in fact by selfish purposes, cf. Lipman v. Forman, 138 N.J. Eq. 556 (Ch. 1946); Mosig v. Jersey Chiropodists, Inc., 122 N.J. Eq. 382 (Ch. 1937). [at 194-195]
I do not believe that N.J. State Bar Ass'n v. Northern N.J. Mortgage Associates, supra, supports plaintiff's right to maintain this action.[8] In N.J. State Bar Ass'n the emphasis of the complaint was upon the injury to the public. The relief sought was injunctive. In analyzing the complaint the court summarized its nature as follows:
Except for the short allegation to the effect that "the individual plaintiffs and all other attorneys at law of the State of New Jersey similarly situated will be deprived of their property right in their licenses to practice law," the emphasis of the complaint is exclusively upon the injury to the public and to the administration of justice. [at 196]
In contrast, the complaint in the instant case is not seeking protection of the public. Its dominant, primary and unmistakable flavor is self-interest on the part of plaintiff. The real motivation for this action is selfish commercial interest. The complaint consists of 13 counts, some of which allege antitrust violations, unfair competition and tortious conduct on the part of the several defendants. The relief sought is money damages, including treble damages for the alleged *424 antitrust violations and injunctions. Conspicuous by the infrequency of its mention is the protection of the public interest. Express reference in the complaint to the public's interest and the alleged injury inflicted on it is made in the fourth and tenth counts. There are a few general incorporating allegations in the other counts. There is also a statement in the first count that the public's confidence in the practice of optometry has been eroded, but this erosion of public confidence is alleged to be an element of the damage suffered by plaintiff and its members.
The general emphasis in this complaint is on injury done to plaintiff and its members. This stands in bold contrast to the complaint filed in the N.J. State Bar Ass'n case where there was only a short allegation of deprivation of plaintiff's property rights and the emphasis of the complaint was exclusively "upon the injury to the public and to the administration of justice." 22 N.J. at 196. I believe the complaint before the court now is that type envisioned by Chief Justice Vanderbilt when, speaking for a unanimous court, he said:
Nor will it be granted to those who proceed under the outward pretense of a public service, motivated in fact by selfish purposes, cf. Lipman v. Forman, 138 N.J. Eq. 556 (Ch. 1946); Mosig v. Jersey Chiropodists, Inc., 122 N.J. Eq. 382 (Ch. 1937). [at 195]
The court is mindful of the fact that the appeal in the N.J. State Bar Ass'n case was from a grant of summary judgment and that the motion before the court now is for a dismissal of the complaint. The standards to be applied are different. It is elementary that on a motion to dismiss a complaint all inferences are to be drawn in favor of plaintiff. Bonnett v. State, 126 N.J. Super. 239, 242 (App. Div. 1974). However, since the only way that plaintiff could maintain this suit is if it were suing in the public interest, I believe that the complaint itself betrays this essential role. It is my opinion that the allegations of the complaint along with the prayers for relief exude a selfish motivation that cannot be countenanced. Even a cursory reading of the complaint *425 leads me to the belief that the interest of the public is only ancillary to the dominant theme of a controversy between plaintiff, its members and the various nongovernmental defendants. Accordingly, I will dismiss all counts of the complaint that seek injunctive relief against defendants based on alleged violations of the Optometry or Optician Act.[9]

IV
In counts seven and eight of the complaint plaintiff alleges violations of the Antitrust Act on the part of the corporate defendants. The Association seeks statutory treble damages and injunctive relief. Again, defendants contend that this plaintiff is not the proper party to bring this suit for antitrust violations because of the fact that plaintiff is a nonprofit organization. It is not engaged in a business for pecuniary benefit.
N.J.S.A. 56:9-12(a) provides:
Any person who shall be injured in his business or property by reason of a violation of the provisions of this act may sue therefor and shall recover threefold the damages sustained by him, together with reasonable attorneys' fees, filing fees and reasonable costs of suit. Reasonable costs of suit may include, but shall not be limited to the expenses of discovery and document reproduction. [Emphasis supplied]
Although there is no reported decision of our courts dealing with this specific provision, guidance may be appropriately found in the decisions construing the corresponding sections of the Clayton Act, 15 U.S.C.A. § 15, upon which our statute is modeled. Clairol, Inc. v. Cosmetics Plus, 130 N.J. Super. 81 (Ch. Div. 1974); Kugler v. Koscot Interplanetary, *426 Inc., 120 N.J. Super. 216 (Ch. Div. 1972). The federal cases have consistently held, as they must, that there must be an injury to complainant's business or property by reason of the defendant's acts. See, Nassau Cty. Ass'n of Ins. Agents, Inc. v. Aetna Life & Cas. Co., 361 F. Supp. 967 (S.D.N.Y. 1973), aff'd 497 F.2d 1151 (2 Cir.), cert. den. 419 U.S. 968, 95 S.Ct. 232, 42 L.Ed.2d 184 (1974), and cases cited therein. Indeed, N.J.S.A. 56:9-12(a) expressly requires an injury to business or property of the plaintiff.
It is difficult to discern from the allegations of the complaint on what basis the Association grounds its antitrust claim. Admittedly, it is not engaged in a business; it is a nonprofit corporation. The complaint speaks of violations of the Optometry and Optician Acts which allegedly are also violations of the Antitrust Act. However, as we have seen, these statutes do not bestow any property rights on the Association or its members. Violations of these regulatory statutes do not give rise to a civil cause of action in favor of the Association. Therefore, since the Association is not engaged in a business and it appears from the complaint that no judicially enforceable property rights of plaintiff have been invaded by the acts of defendants, it is difficult to perceive how plaintiff could suffer injury within the framework of the Antitrust Act. In fact, I would think it impossible. If there be any injury by reason of defendants' acts it would be sustained by the individual optometrists (or opticians) who are at least arguably conducting a business. However, plaintiff is a distinct corporate entity having its own identity separate from its members. See Bergen Cty. Pharmaceutical Ass'n v. Barden, 9 N.J. Super. 480, 483 (Ch. Div. 1950); Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727, 733 (3 Cir.1970), cert. den. 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971). The counts alleging antitrust violations will be dismissed since plaintiff does not come within the class that may institute suit under N.J.S.A. 56:9-12(a).

*427 V
I now direct my attention to the claims of unfair competition on the part of the corporate defendants. Again, what is basically alleged is that the acts of defendants which are alleged violations of the Optometry and Optician Acts also constitute acts of unfair competition vis-a-vis the Association. The allegations of unfair competition do not specify any particular statute on which the claim is based. I will assume for purposes of this discussion that the claim is predicated on the broad common-law principles of unfair competition. Cf. Columbia Broadcasting Syst. v. Melody Recordings, 134 N.J. Super. 368, 375 (App. Div. 1975); American Shops, Inc. v. American Fashion, etc., Inc., 13 N.J. Super. 416 (App. Div.), certif. den. 7 N.J. 576 (1951) Defendants again argue, as they did on the antitrust issue, that the Association can have no interest in prosecuting an unfair competition claim; it is not engaged in business, so how can it claim that it is the subject of unfair competition? Unfair competition presupposes business competition.
The law of unfair competition is an amorphous area of jurisprudence. It knows no clear boundaries. Indeed, the nomenclature itself may be a misnomer. See 1 Callman, Unfair Competition, Trademarks & Monopolies (3 ed. 1967), § 5.1. The concept is as flexible and elastic as the evolving standards of commercial morality demand. Sachs, etc., Radio Co. v. Sachs Quality Stores Corp., 39 N.J. Super. 70, 85 (App. Div. 1956). The judicial tendency is to promote and advocate higher ethical standards in the business world. Q-Tips v. Johnson & Johnson, 206 F.2d 144, 145 (3 Cir.), cert. den. 346 U.S. 867, 74 S.Ct. 106, 98 L.Ed. 377 (1953).
Although it is impossible to categorize all acts which constitute unfair competition, there are a few fundamental elements that are definite. In essence, unfair competition is a business tort. Generally it consists of the misappropriation of one's property by another  property which has some sort of commercial or pecuniary value. 87 C.J.S. Trade-Marks, *428 Trade-Names, and Unfair Competition § 13. The misappropriation usually takes the form of "palming off" or "passing off" another's goods as your own, although this modus operandi is not essential. Columbia Broadcasting Syst. v. Melody Recordings, supra, 134 N.J. Super. at 377-378.
It serves no purpose for this court to embark upon a journey through the maze of cases dealing with the multifarious aspects of the law of unfair competition. Such an undertaking is unwarranted because in my view the issue to be decided is basic: Has plaintiff alleged an injury to a judicially cognizable right? I think not. The reason for this opinion is basically the same for previous holding on plaintiff's standing on the antitrust counts. The Association is a nonprofit organization. It is in competition with no one, including the defendants. The members of the Association might be in competition with defendants, but the Association cannot assert the rights of its members in this context. See, Bergen Cy. Pharmaceutical v. Barden, supra. The Association is not in the business of eye care or ophthalmic dispensing. It is my opinion that a cause of action founded upon claims of unfair competition is not assertable by the Association whether in its own right or on behalf of its members. See California Apparel Creators v. Wieder of California, 162 F. 2d 893 (2 Cir.1974); Key West Cigar Mfrs. Ass'n v. Rosenbloom, 171 F. 296 (S.D.N.Y. 1909). But see, Mutation Mink Breeders Ass'n v. Lou Nierenberg Corp., 23 F.R.D. 155 (S.D.N.Y. 1959).

VI
The remaining counts of the complaint are largely reiterative of the claims already discussed. Likewise, they must fall for the reasons expressed in the various analyses previously presented. This includes the eleventh count specifically directed against Richard M. Kaplan and Vornado, d/b/a Noble Optics, Inc. and d/b/a Noble Eyeglasses.
*429 To summarize, I find that (1) any action against the Board or the Attorney General should be presented in the Appellate Division; (2) the Association does not have a cause of action based on alleged violations of the Optometry or Optician act against any of the defendants; (3) the Association has no standing to sue for violations of the Antitrust act or for alleged acts of unfair competition; (4) the Association has not brought this action for injunctive relief as a genuine protector of the public interest and the Association is not a proper party to bring the damage claims on behalf of its members. As a result, the complaint is dismissed in toto. An appropriate order is to be submitted in accordance herewith.
NOTES
[1] For purposes of this opinion it is unnecessary to set out at length the cited statutes and regulations.
[2] N.J.S.A. 45:12-11 provides in part: "Proceedings for the revocation of a certificate or suspension of the right to practice shall be begun by filing with the board a written charge or charges against the accused. These charges may be preferred by any person or the board may on its own motion direct its secretary to prefer the charges."

N.J.S.A. 45:12-12 sets forth the mechanics of a hearing held by the Board.
[3] The court is not considering material outside the pleadings and treating the motion to dismiss as one for summary judgment. See R. 4:6-2.
[4] Cf. Pascucci v. Vagott, 71 N.J. 40, 52 (1976).
[5] De Nike v. Bd. of Trustees, supra, is clearly distinguishable from our case. In De Nike our Supreme Court specifically found that suit was filed within the applicable time provision although filed in the wrong court.
[6] See generally, Association of Data Processing Service Org., Inc. v. Camp, 397 U.S. 150, 153-154, 90 S.Ct. 827, 830, 25 L.Ed.2d 184, 188-189 (1970); Jaffe, "Standing Again," 84 Harv. L. Rev. 633 (1971).
[7] See generally, Warth v. Seldin, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).
[8] Although it was held that the N.J. State Bar Ass'n did have standing in the suit, it is quite interesting that the three cases cited by the court, i.e., State ex rel. Jackson v. Lindsay, North American Ins. Co. v. Yates and In re Debs, were all instituted by governmental officials.
[9] Although not discussed in the body of this opinion, I have considered Crescent Park Tenants Ass'n v. Realty Equities Corp. of N.Y., supra, and find that the principles enunciated therein afford the Association no greater rights than previously found (or more aptly, not found).